## Brent v. Commonwealth.

(Decided April 21, 1922.)

## Appeal from Nelson Circuit Court.

1. Intoxicating Liquors—Statutes.—The act of March 23, 1920, known as the 1920 prohibition law, is exclusive as to offenses, acts and regulations with which it purports to deal, but the subject of unlawful possession of an illicit or moonshine still is not included within its scope and that part of the act of March 29, 1918 (section 2554d-1, Carroll's Kentucky Statutes, 6th Edition, 1922), which deals with that subject has not been repealed or superseded by the later statute.

2. Criminal Law—Possession of Illicit Still—Instructions.—In a prosecution against one for having in his possession an illicit or moonshine still, the county attorney at the beginning of the case stated to the jury that the evidence would show that some time in the month of July two officers were ambushed and shot in Nelson county while returning from a moonshine still. The trial court instructed the jury that the statement was competent only to show

the purpose in organizing the posse and could not be considered as evidence affecting the guilt or innocence of the accused. Held, in view of that admonition, that the statement was not prejudicial error.

3. Criminal Law—Credibility of Evidence.—A legal conviction cannot be effected except on proof of guilt beyond a reasonable doubt, but the credibility of the evidence is for the jury, and if there is evidence to sustain the verdict it will not be disturbed on the ground that the guilt of the accused was not proven beyond a reasonable doubt.

4. Criminal Law—Use of Word "Possessions."—The word "possessions" in section 10 of the state Constitution should not be deemed to have been used in the broad sense which it might bear, if standing alone, but must be construed in the sense of its relationship to the words of more definite and particular meaning which precede it and with which it is associated and to be construed.

5. Criminal Law—Use of Word "Possessions."—"Possessions" as used in section 10 of the state Constitution was intended to mean those intimate things about one's person, like in kind to those previously denominated in the same provision. But a more definite description of the word cannot be given, as every case where its application is invoked must be determined upon the facts and conditions then under consideration.

6. Criminal Law—Use of Word "Possessions."—Looking to the origin and the history of section 10 of the Constitution and considering the word "possessions" in relationship to the other words with which it is to be construed, it is held that that section was not intended to apply to the searching of woodland located somewhat remotely from a residence.

NAT W. HALSTEAD for appellant.

CHAS. I. DAWSON, Attorney General, and THOMAS B. Mc-GREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

Appellant, Lee Brent, was indicted in the Nelson circuit court for unlawfully and wilfully having in his possession an illicit or "moonshine" still. He was convicted and his punishment fixed at a fine of $500.00 and confinement in the jail of Nelson county for three months.

Appellant resided about four miles from Bardstown and in July, 1921, a posse composed of citizens of Bardstown, without a warrant of any kind, drove in automobiles to his place and leaving their machines on the roadside walked in the direction of his residence, turned to the left and followed an unused road leading away from his residence for a distance of several hundred yards where

they discovered in a ravine evidence of a still. They proceeded up the ravine which was not heavily timbered for some distance and there discovered an illicit still in full blast. After exchanging shots with some persons who were at the still and who fled, the equipment of the still was destroyed. It appears that the still was about 350 or 400 yards from appellant's residence; that it could be seen from his residence and that it was on his land. It also appears that as the party proceeded towards the still three shots were fired from the rear of appellant's residence, presumably for the purpose of warning the operators of the still. After destroying the still some of the party went to appellant's residence but did not enter it. It does not appear that they broke any close or that it was necessary for them to surmount any fence in reaching the still. Some evidence was secured when they returned to the vicinity of the residence but that evidence was slight and its admission was not prejudicial in view of the other evidence offered which, if competent, amply sustained the verdict.

The first assignment of error is that the lower court erred in overruling the demurrer to the indictment and refusing at the conclusion of the Commonwealth's evidence to direct a verdict for appellant.

The argument on this point is that the act of the legislature approved March 23, 1920 (Acts of 1920, page 377), known as the prohibition act of 1920, superseded all other laws on the subject, and since the offense for which appellant was convicted is not denounced by that act, neither the indictment nor the conviction is valid. This contention is not sustainable. The indictment was founded on section 2572c-8, volume 3 of Kentucky Statutes, 1918, (an act of the legislature of March 29, 1918, being section 2554d-1 of Carroll's Kentucky Statutes, 6th edition, 1922.) The act of March 23, 1920, by its title purports to prohibit the manufacture, sale or transportation or other distribution of spirituous, vinous or intoxicating liquors, but neither by its title nor in its context does it deal with the offense for which appellant was convicted, that of unlawfully having in his possesion an illicit or "moonshine" still.

The act of March 23, 1920, is exclusive as to offenses, acts and regulations with which it purports to deal, but the subject of the unlawful possession of an illicit or 'moonshine" still is not included within its scope, and that part of the act of March 29, 1918 (section 2554d-1,

Carroll's Kentucky Statutes, 6th edition, 1922), which deals with that subject has not been repealed or superseded by the later act. Walker v. Commonwealth of Kentucky, 192 Ky. 257, relied on by appellant, is inapplicable. In that case the conviction was had under an indictment for the unlawful sale of spirituous liquor. The sale was made February 28, 1921, after the act of March 23, 1920, went into effect. The penalty was imposed under an act of March 23, 1916. The indictment charged a felony, the basis of which was a previous conviction under the act of 1916. The act of March 23, 1920, being complete as to the offense with which Walker was charged and as to the penalties imposed for its commission, we held that it superseded the act of 1916, and Walker's conviction was invalid. But it does not follow that the act of 1920 repealed a statute not within its scope, such as the statute under which appellant was indicted and convicted, and Walker v. Comonwealth, *supra,* does not so hold.

Appellant complains of the statement of the county attorney, made at the beginning of the trial, to the effect that the evidence would show that some time in the month of July two officers of Nelson county were ambushed and shot while returning from a "moonshine" still. Upon objection to that statement the trial court instructed the jury that it was competent to show the purpose in organizing the posse and that it could not be considered as evidence affecting the guilt or innocence of the accused. In view of that admonition we are unable to see how the statement could have prejudiced appellant or affected the verdict.

Another objection advanced by appellant is that the court erred in refusing to direct a verdict for the defendant at the conclusion of the evidence for the Commonwealth, because there was a failure to show that he was the owner of the land on which the still was found, or if that be not true the evidence failed to show that he saw the still or knew of its location. We do not think this objection well taken. An examination of the record disproves the first proposition, or at any rate discloses evidence to the contrary. As to the second assertion, it was proved that the still was in plain view of appellant's residence and apparently had been operated for some time, was on his property, and, further, that signals of the approach of the members of the party were given from his house, all of which justifies the belief that he was fully

informed as to its location and that it was so located with his knowledge and consent. It is true that a legal conviction cannot be effected except on proof of guilt beyond a reasonable doubt, but nevertheless we have uniformly held that the credibility of the evidence is for the jury and they have the right to take into consideration all the relevant facts and circumstances in reaching their verdict, and if there is evidence to sustain the verdict it will not be disturbed on the ground that the guilt of the accused was not proved beyond a reasonable doubt. (Gordon v. Commonwealth, 136 Ky. 508; Commonwealth v. Little, 140 Ky. 550; Peters v. Commonwealth, 154 Ky. 689; King v. Commonwealth, 143 Ky. 125; Mobley v. Commonwealth, 190 Ky. 424.)

The instructions are complained of as erroneous. They are attacked on the sole ground that they were predicated on the act of 1918, whereas that act was repealed by the act of March 23, 1920. This contention having been disposed of, further discussion of the point in connection with the instructions is unnecessary.

The most serious contention of appellant is that the court erred in permitting the members of the posse to testify to what they observed at the time the still was discovered and destroyed, also that it was error to permit the introduction in evidence of a part of the still. This contention rests on section 10 of the Constitution which provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable search and seizure; and no warrant shall issue to search any place or seize any person or thing without describing them as nearly as may be or without probable cause supported by oath or affirmation." This provision is similar to article 4 of the amendments to the Constitution of the United States. The reasons for the latter provision and for similar provisions in most, if not all, of the state Constitutions have been often stated by courts of last resort. To repeat those reasons would neither add to nor detract from the conclusions that we have reached. It may be stated here, however, that it settled that unwarranted search and seizure of the protected classes of property, or a search and seizure without the authority of a warrant, is tantamount to unreasonable search and seizure, and that evidence so obtained is inadmissible against him whose property has been violated.

The objects of security in section 10 of the state Constitution are the same as those in the fourth amendment

of the Constitution of the United States, except that in the Federal Constitution the word "effects" is used where the word "possessions" is used in the state Constitution. Whether these words as so used include like or different kinds of property has not been decided, but, with their common purpose in view, it is not a strained construction to say that they have the same essential meaning. In either event the determination of appellant's rights, as claimed under section 10 of the state Constitution, necessarily depends on the construction to be given the words "persons, houses, papers and possessions." It is said that "possessions" include everything that appellant had, his farm and every species of property in his actual or constructive possession. But we are cited to no case in which that term, used in connection with other words of limited and restricted meaning, has been given so broad a construction. It is our opinion that the doctrine of *ejusdem generis* applies and that in construing the term "possessions" we must have regard for the particular and specific words preceding it and confine its application to things of like kind.

In Lewis Sutherland's Statutory Construction, volume 2, page 814, it is said: "When general words follow an enumeration of particular things, such words must be held to include only such things or objects as are of the same kind as those especially enumerated." This is a rule too well established for discussion. It is supported by decisions from the courts of last resort of almost every state in the union. It has been applied by this court in Smith v. Cochran, etc., 7 Bush 141; Kennedy v. Foster's Exor., 14 Bush 479; Aetna Ins. Co. v. Commonwealth, 106 Ky. 864, and among numerous authorities from other jurisdictions sustaining the text quoted, we cite Benton v. Benton, (N. H.) 56 American Reports, 512; Cecil v. Green, 32 L. R. A. 566; Gundling v. City of Chicago, 48 L. R. A. 230; State of Minn. v. Barge, 53 L. R. A. 428.

In view of this recognized rule it seems to us that the word "possessions" should be deemed to have been used, not in the broad sense which it might bear if standing alone, but, in the sense of its relationship to the words of more definite and particular meaning which precede it and with which it is associated and to be construed. If considered in its broadest sense it includes "houses" and "papers" and no effect whatever could be given to those words, which would result in the violation of a well known

rule of statutory construction. Why the use of the words
"houses" and "papers," if the word "possessions" is
to be construed as meaning every species of property in
one's actual or constructive possession? It is not to be
presumed that the Constitution makers intended the
word to be all embracing and inclusive and in effect to
nullify and render superfluous other words associated
with it. In our opinion it was intended to mean the in-
timate things about one's person like in kind to those pre-
viously denominated, but further than that we would not
attempt to define its meaning, as whenever invoked its
proper application must be determined upon the particu-
lar facts and conditions then under consideration.

We have been able to find no decision in which article
10 of the Constitution has been construed as prohibiting
the searching of woodland, somewhat remotely situated
from the residence of the owner. Neither have we been
cited to any case in which the fourth amendment to the
Federal Constitution has been so extended. Youman v.
Commonwealth, 189 Ky. 152, 13 A. L. R. 1303, does not
sustain appellant's contention. There is a discoursive
treatment of the subject of search and seizure in that
opinion, but the question for decision there was whether
or not the Constitution protected the accused against
the search of his residence and outbuildings. It was quite
correctly held that the protection was afforded, but be-
yond the point involved in that case the opinion is not au-
thority. Ash v. Commonwealth, 193 Ky. 452, involved
the search of appellant's suit case and that article, being
intimately associated with the person, was held to be such
a possession as comes within the meaning of the con-
stitutional guaranty.

In State v. Marxhausen, (Mich.) 3 A. L. R. 1505, cited
in the Youman and Ash cases, *supra,* the dwelling of the
accused was entered and searched. Under a provision of
the Michigan constitution similar to ours the search was
held to be unlawful. This was necessarily so, since the
constitution of that state in terms prohibits the unrea-
sonable search of one's house. Cited in that opinion, as
comprehensively stating the policy of the national govern-
ment on this subject, are the cases of Boyd, etc. v. U. S.,
116 U. S. 616; Adams v. N. Y., 192 U. S. 585; Weeks v. U.
S., 383 U. S. In the first case mentioned it was held that
it does not require actual entry upon premises and a
search for and seizure of papers to constitute unreason-
able search and seizure within the meaning of the fourth

amendment; that a compulsory production of one's private books and papers to be used against one's self or his property in a criminal or penal proceeding or for a forfeiture is within the spirit and meaning of the amendment.

The opinion in the Adams case, while discussing the violation of private security in person and property and unlawful invasion of the sanctity of the home by citizens and officers, is in nowise applicable to the facts in this case other than as the general principles announced may be deemed pertinent to the subject as a whole. In Weeks v. U. S. it was held that immunity from unreasonable search and seizure offered by the fourth amendment was denied to the accused in a criminal prosecution in a Federal court, but it will be noted in that case that a United States marshal seized the letters and private documents of accused in his house during the absence of the accused from this country.

None of the decisions of the Supreme Court is decisive of the facts in this case. They are referred to because they are authoritative constructions of the provision in the Federal Constitution which is similar to the provision under consideration. The fourth amendment is a limitation on the power of the Federal Government and not a limitation on the powers of the respective states. (Spies, et al. v. Illinois, 123 U. S. 131; Nat'l Safe Deposit Co. v. Stead, 232 U. S. 58; Weeks v. U. S., 232 U. S. 383; Adams v. N. Y., 192 U S. 585.) But nevertheless had that amendment been construed as granting immunity in a case like this we would regard it as decisive of the policy to be adopted in this state. In the absence of a controlling construction we must define the term "possessions" with the view of carrying out the intent of the provision as it may or may not adapt itself to the facts in this case

The right to immunity from unreasonable interference with security in person and property is unquestionable. The guaranties of section 10 of our Constitution were intended to preserve that right. But the framers of that instrument were equally intent upon the proper administration of other governmental functions, among which is the efficacious enforcement of valid laws to the end that order shall prevail. This aim of government is hardly less important than the preservation of personal liberty, for the latter is obviously dependent upon the maintenance of law and order. To give to the word "pos-

sessions'' the broad construction sought would often result in the imposition of conditions under which it would be impracticable effectively to enforce the criminal laws of the state. In parts of the state the land titles and boundaries are unsettled and in those sections the procuring of evidence against violators of the criminal laws would in many cases be seriously impeded, if not wholly arrested, since it would be utterly impracticable to obtain warrants descriptive of the land to be searched. In such cases the ownership of title would frequently be the decisive factor in the administration of justice. Undoubtedly the inefficient administration of law is less harmful to society in general than an arbitrary enforcement of it, but it seems to us that the preservation of the rights of persons and property under section 10 of the Constitution, and the maintenance of law and order, may each be effectuated without doing violence to the other and without impairing the effective and practical processes for the attainment of both ends. In our opinion these results could not be accomplished if section 10 of the Constitution be construed as prohibiting the searching, without warrant, of a somewhat remote woodland, for an unlawful thing, with the consequent inhibition against the introduction of evidence procured in such a search.

Constitutional provisions of this kind rest on the fundamental principle that every man's house is his castle and is inviolable. And we repeat that we have been cited to no case in which such a provision has been held to grant immunity from search for and seizure of an illegal thing situated in a woodland remote from the residence of the owner. The provision under consideration was incorporated into our first Constitution when the state was sparsely settled and the inhabitants owned large tracts of uninclosed land. This is more or less true of similar provisions in other Constitutions. The framers of those Constitutions had inherited no practice or tradition that impelled them to safeguard vast tracts of land, but, profiting by the experience of their forefathers, they were desirous of preserving inviolate the person of every citizen and those possessions intimately associated with his person, his house, his papers and his effects. Hence they incorporated into their organic laws, federal and state, provisions designed to effectuate that purpose. Looking to that origin and to the history of such provisions, and considering the word ''possessions'' in its

relationship to the other words with which it is to be construed, we cannot regard section 10 of our Constitution as intended to apply to a state of facts such as is presented in this record.

We, therefore, conclude that the evidence complained of was properly admitted, and since it abundantly supports the finding of guilt and no errors were committed on the trial, the judgment is affirmed.

Whole court sitting.