FALKNER *et al.* *v.* STATE.

[98 So. 691.   No. 23233.]

(En Banc.   Jan. 28, 1924.)

CRIMINAL LAW.   *Searches and seizures.   Constitutional prohibition of unreasonable seizure or search extends to all property and possessions; evidence obtained by unlawful search inadmissible.*

Constitution 1890, section 23, providing "The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search;   and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized," extends to all of the property and possessions of a citizen, and no part of his property can be invaded and searched without a search warrant specially designating the place to be searched, and the evidence obtained by means of an unlawful search is not admissible against the owner in a criminal prosecution against him.

COOK and HOLDEN, JJ., dissenting in part.

APPEAL from circuit court of Leake county.

HON. G. E. WILSON, Judge.

Tom Falkner and Pete Falkner were convicted of an attempt to unlawfully manufacture intoxicating liquor, and they appeal. Reversed as to Tom Falkner and affirmed as to Pete Falkner.

*James T. Crawley,* for appellants.

Evidence acquired in an illegal search by officers of the law, without a search warrant, as in the instant case, is inadmissible, and cannot be offered against the defendants. *Tucker* v. *State,* 90 So. 845; *Williams* v. *State,* 92 So. 584; *Miller et al.* v. *State,* 93 So. 2; *Butler* v. *State,* 93 So. 3; *Taylor* v. *State,* 93 So. 355.

In the instructions the jury should have been told by the state that before they could convict the defendants of a felony, the jury must believe beyond every reasonable doubt that the defendants did unlawfully and feloniously do that thing for which the state sought a conviction. 16 Corpus Juris, 968, sec. 2362

In a felony case the defendant has a right to have the law distinctly declared to the jury in the instructions. *Staten* v. *State,* 30 Miss. 619; 1 Morris's State Cases, 834; *Cothran* v. *State,* 39 Miss. 541, 2 Morris's State Cases, 1382; 3 Wharton's Criminal Procedure (10 Ed.), 2075, section 1644.

Considering the authorities as they are offered above, we respectfully maintain that the words ''feloniously'' and ''unlawfully'' were necessary in each of said instructions given the state.

*S. C. Broom,* Assistant Attorney-General, for the state.

The appellants contend that Instruction No. 1 is erroneous, because it leaves out the words ''unlawfully'' and ''feloniously.'' A complete answer to this, in this

particular case, is that you cannot manufacture intoxicating liquor in the state of Mississippi without committing a felony. It is a felony, made so by statute. It cannot be manufactured at any time, in any way, or under any circumstances, without being a felony. It is unlike murder, or most all other felonies. Not every homicide is murder; not every homicide is a felony. The killing might be excusable or justifiable. Not so with the manufacture of whisky. It is always a felony.

The law of search and seizure is not involved in this case. No search or seizure was made. The sheriff and his deputy received information that there was a still and some beer or some mash over in Beat Four in Leake county, out in the woods at a point three hundred yards away from the home of the appellants herein. They did not know on whose land this still was located; they did not know who had placed it there, and they could not procure a search warrant particularly describing the place and the man to be searched, when, as a matter of fact, they did not know the particular description of the land nor the owner of it, nor did they know the man or men who had placed the apparatus there for distilling whisky. In other words, the officers in this case were engaged in the necessary preliminary work that would have enabled them to go before a justice of the peace and swear out a search warrant that would enable them to go there and seize the still.

Argued orally by *Jas. T. Crawley,* for appellants, and *S. C. Broom,* assistant attorney-genral, for the state.

ETHRIDGE, J., delivered the opinion of the court.

The appellants were convicted of an attempt to manufacture intoxicating liquor, and sentenced to one year each in the State Penitentiary, from which conviction they appeal, and assign several things as error; one of the assignments being that the court erred in admitting

in evidence the testimony of the sheriff and constable as to the finding of a still and mash upon the premises of the appellant Tom Falkner as the result of a search without a search warrant. The evidence shows that the still was in the wooded land of Tom Falkner.

It was held in *Tucker* v. *State,* 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377, and in subsequent cases, that evidence procured without a search warrant was not admissible in evidence; but the other cases involved searches of residences and buildings or rooms under section 2088, Hemingway's Code (section 1749, Code of 1906), whereas in the present case the still and mash were found upon the premises of the appellant Tom Falkner about three hundred yards from his residence in the woods. The appellant Pete Falkner lived somewhere on the premises of Tom Falkner, but the record does not disclose exactly where or in what capacity he lived there, or what his rights of possession were.

The attorney-general in his brief says:

"The sheriff and his deputy located the place and found there four barrels of beer and a still with furnace and trough near a spring, and all things necessary for the manufacture of liquor. This was found in a wooded district. The sheriff did not know who owned the land nor who claimed it. They did not know who had placed the beer there or who owned the still. They therefore concealed themselves and determined to keep watch until such time as the guilty parties would come to operate the still. On one occasion, after having kept an all-night vigil, they saw the defendants come there and stir the beer and busy themselves round about the place, whereupon the sheriff and his deputy attempted to draw nearer to the place in order that they might get a better view, or perhaps hear some conversation between the parties, but, unfortunately, they were discovered, and the appellants ran away. . . . The still and mash have not been introduced in evidence, nothing has been seized, the privacy

of no home has been disturbed, no doors have been broken, no arrests have been made. The sheriff and his deputy have simply testified that they discovered four barrels of beer or mash and a still for distilling the same into intoxicating liquor in the woods at a point three hundred yards from the home of the defendants.''

The testimony upon which the appellants were convicted was that of the sheriff and his deputy obtained by them when searching the premises of the appellant Tom Falkner without a warrant. Does the prohibition of section 23 of the Constitution, as construed in the *Tucker Case, supra,* apply to a place where no buildings are situated? Section 23 reads as follows:

''The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or.thing to be seized.''

The security of the section is of the persons, houses, and possessions. If the section meant only to protect the persons and houses the words ''and possessions'' would be superfluous and meaningless. The rule is clear that in construing Constitutions every word is to be given some meaning. The words ''and possessions'' indicate clearly something other than houses and persons. The term ''possessions'' is a very comprehensive term, and includes practically everything which may be owned, and over which a person may exercise control. Webster, in his Unabridged Dictionary, defines the word ''possession'' as follows:

''In law, Act, fact or condition of a person having such control of property that he may legally enjoy it to the exclusion of others having no better right than himself. The thing possessed; that which any one occupies, owns or controls; property in the aggregate, wealth, dominion.''

134 Miss.—17

Black, in his Law Dictionary, defines "possession" as follows:

"The detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises it in one's place and name. That condition of facts under which one can exercise his power over a corporeal thing at his pleasure to the exclusion of all other persons."

In 6 Words and Phrases, First Series, p. 5464, "possession" is defined as follows:

"Possession is a detention or enjoyment of a thing which a man holds or exercises by himself or by another, who keeps or exercises it in his name"—citing authorities.

"The possession which is necessary as an element in the acquisition of title by prescription must have three qualities; it must be long, continual, and peaceable"—citing authorities.

"Possession is denoted by the exercise of acts of dominion over the property, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state; such acts to be so repeated as to show that they are done in the character of owner, and not as an occasional trespasser."

"Possession is that condition of fact under which one can exercise his power over a corporeal thing to the exclusion of all others."

Numerous other definitions are set forth in the said volume last cited.

The rule is well settled that constitutional provisions designed for the protection of persons are to be liberally construed. *Boyd* v. *United States,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; *Gouled* v. *United States,* 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647.

"The object of the Constitution being to protect life, liberty and property, no word in the Constitution having this effect can be rejected or disregarded in construing the Constitution, but all such words are to have full effect." *Thompson* v. *Grand Gulf Railroad & Banking Co.,* 3 How. (Miss.) 240, 34 Am. Dec. 81.

"A Constitution should be construed so as to effectuate, not defeat, the policy indicated by its framers." *Brien* v. *Williamson,* 7 How. (Miss.) 14.

In discussing the question of the similar provision of the Federal Constitution the supreme court, in the *Boyd Case, supra,* at page 534 of the Supreme Court Reporter, said:

"As, therefore, suits for penalties and forfeitures, incurred by the commission of offenses against the law, are of this *quasi*-criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the Fourth Amendment of the Constitution, and of that portion of the Fifth Amendment which declares that no person shall be compelled in any criminal case to be a witness against himself; and we are further of opinion that a compulsory production of the private books and papers of the owner of goods sought to be forfeited in such a suit is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution, and is the equivalent of a search and seizure —and an unreasonable search and seizure—within the meaning of the Fourth Amendment. Though the proceeding in question is divested of many of the aggravating incidents of actual search and seizure, yet, as before said, it contains their substance and essence, and effects their substantial purpose. It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional

provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsta principiis.* We have no doubt that the legislative body is actuated by the same motives; but the vast accumulation of public business brought before it sometimes prevents it, on a first presentation, from noticing objections which become developed by time and the practical application of the objectionable law." 116 U. S. 634.

In *Weeks* v. *United States,* 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, the supreme court of the United States quoted from *Bram* v. *United States,* 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568, 10 Am. Crim. Rep. 547, the following language:

"The effect of the Fourth Amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to

which people of all conditions have a right to appeal for the maintenance of such fundamental rights."

The language of the Fourth Amendment to the Constitution of the United States is: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation."

In the case of *In re Jackson*, 96 U. S. 727, 24 L. Ed. 877, the supreme court of the United States, in construing the provision of the United States Constitution above quoted, held that a letter sealed and placed in the mail of the United States could not be seized or opened without a search warrant, holding that the constitutional protection extended to the effect of the citizen wherever it may be situated.

The language of our Constitution is some what broader than the words "papers or effects," and, applying the principle of liberal construction which governs in cases affecting the liberty and property of the citizen, we think the term embraces all of the property of the citizen.

The history of the adoption of the first ten amendments to the United States Constitution and the Bill of Rights of the several state Constitutions show that it was the purpose of the framers of the Constitution to except out of the powers of legislation conferred on the several legislative bodies the power to infringe these rights except in the manner provided for in the said several sections. The great controversy that arose in this country over the "writs of assistance," which were search warrants issued to enable the government to invade the property and houses of the citizen—the writs of assistance were regarded with great aversion by the people of this country—and the history of the search warrants throughout the existence of time which they have existed, shows that they have been distasteful to free men, and especially to the American and English

free men. The constitutional provisions necessarily restrict the activity and the efficiency of the law-enforcing officers, and necessarily some mischief must go undiscovered sometimes; but this was regarded as a less evil than giving officers unrestricted power to invade the property and houses of the citizen in search of evidence. Crime has never been completely suppressed in any government, and perhaps never will be. For thousands of years the rulers of the world possessed unrestricted power, and yet crime existed even in a greater degree than it exists now in the states and countries where the rights of search and seizure are restricted. But, regardless of the consequences, whether crime will flourish or be suppressed, the Constitution is the supreme law, and the court is placed under oath to support and maintain it, and it is the duty of the court to adhere to and uphold the Constitution. The court had nothing to do with promulgating or ordaining the Constitution; that has been done by the people acting through their proper representatives, who have placed the court under oath to uphold and maintain the Constitution regardless of either legislative action or popular clamor. The Constitution has been approved by the people, and was promulgated for their protection, and the public policy which it declares is binding upon the court.

We are therefore convinced that the search made in this case was unlawful as to Tom Falkner, and that the evidence obtained thereby was an invasion of his rights, and could not be used in a criminal prosecution against him. We have held that a defendant cannot complain of the unlawful search of the 'premises of another. *Harris* v. *State,* 98 So. 349. Therefore it is not an error of which Pete Falkner can complain that an unlawful search of Tom Falkner's place was made and evidence obtained thereby.

The judgment will be reversed as to Tom Falkner, and the cause remanded, and affirmed as to Pete Falkner.

*Reversed as to Tom Falkner; affirmed as to Pete Falkner.*

COOK and HOLDEN, JJ., dissent as to reversal and concur in affirmance.

SMITH, C. J. (specially concurring).

I concur in the holding set forth in the main opinion that the place here searched by the sheriff is a "possession" within the meaning of section 23 of the Constitution. There is no claim on the part of the sheriff that he searched Falkner's premises because of information received by him that intoxicating liquor was being manufactured there; his right to make the search without a warrant on probable cause under section 5, chapter 189, Laws of 1918, therefore does not arise. Consequently the search without a warrant was illegal. I am of the opinion, however, that the evidence was admissible not only against Pete Falkner, but against Tom Falkner also, for the reasons set forth in my dissenting opinion in *Owens* v. *State,* 98 So. 233, to which I adhere. Until the cases of *Tucker* v. *State,* 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377, and *Owens* v. *State,* 98 So. 233, are overruled, I must bow, of course, to their authority. Consequently I must concur in the reversal of the judgment of the court below as to Tom Falkner, and of course I concur also in the affirmance of the judgment as to Pete Falkner.