Merrimack
No. 6329

## STATE OF NEW HAMPSHIRE v. GEORGE HANSON

December 28, 1973

*Warren B. Rudman,* attorney general, and *Gregory H. Smith,* attorney (*Mr. Smith* orally), for the State of New Hampshire.

*Harvey A. Silverglate,* of Massachusetts, and *William H. Kelley* and *R. John Roy (Mr. Roy* orally) for the defendant.

GRIMES, J. The issue in this case involves the validity of a search warrant issued on information obtained by officers who entered upon part of farm premises rented and occupied by the defendant and observed marijuana growing in a garden.

Defendant was indicted with others under RSA 318-B:2 for manufacture of the controlled drug marijuana without a license. His motion to suppress as evidence certain plants, jars, and other containers containing marijuana which were seized under a warrant was denied subject to his exception. The jury returned a guilty verdict and defendant's exceptions were transferred by *Keller,* C. J.

The affidavit in support of the warrant stated in substance that a "creditable" person on January 5, 1970, had given information that drug transactions were taking place at the "old Mack place" which investigation disclosed was rented by the defendant and his wife who were of the "hippie cult", that several out-of-State vehicles with occupants of the "hippie cult", were seen at the premises, that on August 17, 1970, and at other times the affiant and another officer observed marijuana growing in a garden in a field southerly of the residence with a path leading to the residence, that persons were observed in the garden examining the plants, and that tents were observed in another field on the property. The warrant authorized a search of the dwelling, the curtilage, and canvas tents.

It is defendant's contention that the warrant was invalid because the facts and circumstances used to support its issuance were acquired by an illegal search of the defendant's premises by the officers involved. If this were true, the warrant would of course be invalid. *McGinnis v. United States,* 227 F.2d 598 (1st Cir. 1955).

Defendant's contention rests on a two-point base: First that the area from which the officers made their observation and the garden itself were part of the curtilage and second that the garden was a place where under the doctrine of *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967), he had a reasonable expectation of privacy. We hold the warrant to have been valid.

According to the uncontradicted testimony of the officers at the suppression hearing, the garden which they kept under surveillance was located in a field surrounded on three sides by woods and on the fourth by a grown-up field, that it was a quarter of a mile from the dwelling and not visible from it. The field in question in which the garden was located was connected by a path to another field in which three other gardens and two tents were located. The officers, led by an informant, walked for about five minutes through woods to get to the field in question.

The curtilage includes those outbuildings which are directly and intimately connected with the habitation and in proximity thereto (*State v. Charette,* 98 N.H. 477, 479, 103 A.2d 192,

193 (1954)) and the land or grounds surrounding the dwelling which are necessary and convenient and habitually used for family purposes and carrying on domestic employment. 68 Am. Jur. 2d *Searches and Seizures* §20 (1973). What is included "within the curtilage is to be determined from the facts, including its proximity . . . to the dwelling, its inclusion within the general enclosure surrounding the dwelling and its use and enjoyment as an adjunct to the domestic economy of the family". *Care v. United States,* 231 F.2d 22, 25 (10th Cir. 1956). That case held that a plowed field enclosed by a mesh wire fence more than a city block from the dwelling was not within the curtilage and that a search by an agent who entered the field did not violate the fourth amendment.

We hold that the garden first observed by the officers, located as it was a quarter of a mile away and not visible from the dwelling was not within the curtilage. *Hester v. United States,* 265 U.S. 57, 68 L. Ed. 898, 44 S. Ct. 445 (1924). Not being within the curtilage, there was no unconstitutional search even though the officers may have been trespassing (*Care v. United States,* 231 F.2d 22 (10th Cir. 1956); *United States v. Capps,* 435 F.2d 637 (9th Cir. 1970); *McDowell v. United States,* 383 F.2d 599 (8th Cir. 1967)) unless the principle of *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967), applies. In that case, officers attached to the top of a public telephone booth a listening device to overhear defendant's conversations. The Court rejected the "protected area" test, said that the fourth amendment protected people not places and applied when there was a reasonable expectation of privacy. In *Wattenburg v. United States,* 388 F.2d 853 (9th Cir. 1968), stolen Christmas trees stored within 35 feet of a dwelling were held to be within the curtilage but the Court went on to say that because of their location there was also a reasonable expectation of privacy and that defendants were protected by the *Katz* principle.

It seems to us that with regard to areas around a dwelling, there is a close relationship between the basis for determining if an area is within the curtilage and whether it is a place where there is a reasonable expectation of privacy. In the case before us we have held that the garden and field were not within the curtilage, and we also hold that they were

not in such proximity to the dwelling that there was any reasonable expectation of privacy.

*Exceptions overruled.*

All concurred.