Carroll
No. 84-477

## THE STATE OF NEW HAMPSHIRE

v.

## BERNARD R. PINDER

May 9, 1986

*Stephen E. Merrill,* attorney general (*Andrew L. Isaac,* assistant attorney general, on the brief and orally), for the State.

*Burns, Bryant, Hinchey, Cox & Shea,* of Dover (*Anthony A. McManus* on the brief and orally), for the defendant.

KING, C.J. The defendant was convicted in a trial before the Superior Court (*Wyman,* J.) of knowingly having under his control over two pounds of marijuana and of knowingly manufacturing the marijuana, both violations of RSA 318-B:2. The defendant appealed, and we affirm.

On August 27, 1983, a deputy sheriff from the Carroll County sheriff's office was told by an unnamed informant that the informant had discovered what he believed to be marijuana growing in an isolated clearing in woods located in Ossipee. The informant also related that a yellow house trailer was situated nearby.

The deputy and a sergeant of the State Police consulted the Ossipee tax and deed maps. They confirmed that a trailer was located in the area described by the informant, and they also learned that the deed to the property was in the name of Bernard R. Pinder, the defendant. The officers sought a warrant to search the Pinder property and the inside of the trailer. A magistrate issued a warrant to search the woods and clearing, but not the trailer, finding no probable cause to search that structure.

When the officers went to the defendant's property to execute the search warrant, they found a wire rope stretched across the driveway leading to the trailer, which was visible from the public highway. Using a half-inch wrench, the officers undid one of the ties holding the rope up and entered the property. The officers observed "Beware of Dog" signs hanging on the porch and on a tree, and they also saw "a couple of 'No Trespassing' signs."

After entering the defendant's land, the officers followed an old logging road behind the trailer into the woods. There they found three separate fields of marijuana. The fields were approximately one-quarter mile behind the trailer and were not visible from the public highway. The hundreds of marijuana plants the officers found in the remote fields were watered by an extensive system of pipes, hoses, and shower attachments. After this initial search, the officers, relying on what they saw during the first search, sought and were granted a second search warrant for the inside of the trailer. One of the officers who conducted the first search reported in the affidavit in support of the second search warrant that:

> "The various hoses in the watering system were all connected to one hose which [we] traced through the woods to its termination, an outside water outlit [sic] comming [sic] from under the yellow trailer . . . . This trailer being the only source of water for the plants. In front of the trailer we located an artiesian [sic] well. Beside the trailer wer [sic] located more hose which was rolled up and identical to some of the hose connecting the trailer to the plants."

The officers' search of the trailer yielded, among other things, a quantity of marijuana, dried animal blood fertilizer and other materials for use in growing plants, two magazines with the defendant's name and his Newton Junction address on them, and an approval for construction of a septic system made out to the defendant from the State Water Supply and Pollution Control Commission.

In October 1983, the defendant was indicted for (1) knowingly having under his control in excess of two pounds of marijuana and (2) manufacturing over 350 marijuana plants on his Ossipee land,

both in violation of RSA 318-B:2. The manufacturing indictment was defective in that it failed to allege a mental state of the defendant. The defect was corrected by an indictment returned against the defendant in July of 1984, alleging that he *knowingly* manufactured marijuana.

Prior to trial, the defendant moved to suppress evidence seized under both search warrants, claiming that the issuance of the warrants was not supported by probable cause. At the hearing on the motions to suppress, the State argued, first, that a warrant was not needed to search the woods on the Pinder property and, second, that the issuance of both warrants was supported by probable cause. The trial court denied the motions to suppress.

The defendant also moved to dismiss both the October 1983 and the July 1984 marijuana manufacturing indictments. The defendant claimed that the first was invalid on its face, and that the second was not brought within sixty days of the defendant's arrest, in violation of the rule in *State v. Hastings*, 120 N.H. 454, 417 A.2d 7 (1980). The motion was denied.

In August 1984, the defendant was tried before the superior court and was convicted under both the possession and the manufacturing indictments. The defendant filed a motion for reconsideration, requesting that the trial court set aside its verdict on the grounds that the State failed to introduce sufficient evidence to prove that the defendant manufactured or possessed marijuana, and that the State failed to prove each and every element of both charges. In his motion for reconsideration, the defendant also renewed his motions to suppress and to dismiss. The motion for reconsideration was denied. From the denials of these motions and from his convictions the defendant appeals, and we affirm.

The defendant's first argument on appeal is that our rule in *Hastings* that an indictment should normally be brought within sixty days from a defendant's arrest requires dismissal of the marijuana manufacturing indictment in this case. We disagree.

In *State v. Hastings*, 120 N.H. at 455, 417 A.2d at 8, we noted that, "We can see no reason why an indictment should not be brought within sixty days from the date of an arrest." We added that should an indictment not be brought within the prescribed time, "it will be the State's burden to demonstrate that the delay has not been unreasonable." *Id.* at 455–56, 417 A.2d at 8 (citation omitted). Although the *Hastings* rule is "not to be lightly regarded," *State v. Hughes*, 123 N.H. 66, 67, 455 A.2d 1069, 1070 (1983), "it should not be mechanically applied," *State v. Berger*, 125 N.H. 83, 91, 480 A.2d 27, 31 (1984).

In this case, the defendant was arrested on August 28, 1983. He was indicted on October 18, 1983, within sixty days of his arrest, for manufacturing marijuana in violation of RSA 318-B:2. The indictment charged that the defendant

"did, manufacture a quantity of a controlled drug, to wit: Marijuana, that he did on property owned by him grow over 350 (three hundred and fifty) marijuana plants at Ossipee, New Hampshire[.]"

The 1983 indictment also cited "RSA 318-B:2." The indictment was defective because it did not allege a culpable mental state or *mens rea*. RSA 626:2, I; *see State v. Aldrich*, 124 N.H. 43, 466 A.2d 938 (1983).

On July 24, 1984, some eleven months after the defendant's arrest, a second manufacturing indictment was returned against him. The second indictment was identical to the first save for the word "knowingly," which appeared between "did" and "manufacture," and the words "Class A Felony," which appeared next to the citation "RSA 318-B:2." This second indictment was returned nearly one month prior to the defendant's August 22, 1984 trial.

■ We hold that the State satisfied the *Hastings* requirement in this case. The initial indictment, though defective, nevertheless apprised the defendant of the nature and cause of the accusation against him, *see State v. Monahan*, 125 N.H. 17, 24–25, 480 A.2d 863, 868 (1984). The second indictment did not work a surprise on the defendant which prejudiced his defense, *cf. State v. Spade*, 118 N.H. 186, 385 A.2d 115 (1978) (amended indictment was not a surprise which prejudiced accused's defense).

The defendant's second argument on appeal is that the State produced insufficient evidence at his trial to prove that he knowingly manufactured or knowingly possessed marijuana. We disagree.

■■ In a criminal case, the State must establish guilt beyond a reasonable doubt, *State v. Adelson*, 118 N.H. 484, 486, 389 A.2d 1382, 1384 (1978), for each of the elements of the crime charged. *State v. Fossett*, 119 N.H. 155, 156, 399 A.2d 966, 967 (1979). "It is well established in this State that circumstantial evidence may be sufficient to support a conviction if it excludes all other rational conclusions." *State v. Woodman*, 125 N.H. 381, 386, 480 A.2d 169, 172 (1984).

■■ The defendant has the burden of showing that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 386, 480 A.2d at 172. "In determining whether the

evidence is sufficient to support a finding of guilt beyond a reasonable doubt, we will view the evidence in the light most favorable to the prosecution." *Id.*

We conclude that defendant Pinder has failed to sustain his burden of proof that the entire body of evidence was insufficient to prove he committed the crimes of knowingly manufacturing and knowingly possessing marijuana, where the State introduced evidence that Pinder was the record owner of the Ossipee land, that Pinder's name was on an application for a waste disposal system for the site, and that two magazines with the defendant's name and home address were found in the trailer.

The defendant's third argument on appeal is that there was not probable cause to issue the search warrants for the defendant's Ossipee property, that lack of probable cause made the search warrants invalid, and that lack of valid search warrants made the searches of the property unreasonable under part I, article 19 of the New Hampshire Constitution. We disagree, since we hold that no warrant was required for the first search and that probable cause existed to issue the second search warrant.

The defendant does not make a claim under the Federal Constitution's Bill of Rights. Thus, our decision is based upon an independent analysis of the protections afforded under the New Hampshire Constitution. *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). We use decisions of the United States Supreme Court and other jurisdictions only as aids in our analysis. *See Michigan v. Long*, 103 S. Ct. 3469, 3476 (1983).

Part I, article 19 of the New Hampshire Constitution provides:

> "Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions. Therefore, all warrants to search suspected places . . . are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; . . . and no warrant ought to be issued . . . [except] with the formalities, prescribed by law."

We have interpreted part I, article 19 as prohibiting "*all* unreasonable searches of *all* a citizen's possessions." *State v. Settle*, 122 N.H. 214, 218, 447 A.2d 1284, 1286 (1982) (emphasis in original); *see State v. Ball*, 124 N.H. at 234, 471 A.2d at 352; *State v. Sidebotham*, 124 N.H. 682, 687, 474 A.2d 1377, 1379 (1984). "'Unless a warrantless search [or seizure] falls within one of the few specifically established and well-delineated exceptions, it is *per se* unrea-

sonable.'" *State v. Koppel*, 127 N.H. 286, 289, 499 A.2d 977, 980 (1985) (quoting *State v. Ball*, 124 N.H. at 234, 471 A.2d at 362).

A question we must answer is what part, if any, of the defendant's Ossipee land is a "possession" which falls under the protection of the warrant requirement. The Mississippi Supreme Court, in interpreting the Mississippi constitutional provision which provides that "The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search," took the view that "the term ['possessions'] embraces all of the property of the citizen." *Falkner v. State*, 134 Miss. 253, 257–61, 98 So. 691, 692–93 (1924). The Mississippi court reasoned:

> "The rule is clear that in construing Constitutions every word is to be given some meaning. The words 'and possessions' indicate clearly something other than houses and persons. The term 'possessions' is a very comprehensive term, and includes practically everything which may be owned, and over which a person may exercise control."

*Id.* at 257, 98 So. at 692 (citations omitted).

On the other hand, the highest court of Kentucky, in construing the phrase "persons, houses, papers and possessions," has found that "possessions" means "[t]he intimate things about one's person, like in kind to those previously denominated." *Brent v. Commonwealth*, 194 Ky. 504, 509–10, 240 S.W. 45, 47–48 (1922). The Kentucky court rejected the defendant's claim that "possessions" should include everything that the defendant owned, "his farm and every species of property in his actual or constructive possession," including a woodland somewhat remote from his dwelling. *Id.* at 509, 240 S.W. at 47. In applying the doctrine of *ejusdem generis*, the court noted that if it gave the term "possessions" its broadest meaning, then the word would include "houses" and "papers." *Id.* at 509–10, 240 S.W. at 48. "It is not to be presumed that the Constitution makers intended ['possessions'] to be all-embracing and inclusive and in effect to nullify and render superfluous other words associated with it." *Id.* at 510, 240 S.W. at 48. The court found that,

> "The framers of [America's] Constitutions had inherited no practice or tradition that impelled them to safeguard vast tracts of land, but, profiting by the experience of their forefathers, they were desirous of preserving inviolate the person of every citizen and those possessions intimately associated with his person, his house, his papers, and his effects."

*Id.* at 512, 240 S.W. at 49.

The United States Supreme Court, in *Hester v. United States*, 265 U.S. 57 (1924), held that under the fourth amendment to the United States Constitution, police did not need a warrant to search "open fields." As Justice Holmes noted, "[T]he special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects', is not extended to the open fields. The distinction between the latter and the house is as old as the common law." *Id.* at 59. As the Court noted in *Oliver v. United States*, 104 S. Ct. 1735 (1984), "the term 'open fields' may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither 'open' nor a 'field' as those terms are used in common speech. For example, . . . a thickly wooded area nonetheless may be an open field as that term is used in construing the Fourth Amendment." *Id.* at 1742 n.11 (citations omitted); *see Commonwealth v. Lewis*, 346 Mass. 373, 381, 191 N.E.2d 753, 759 (1963), *cert. denied*, 376 U.S. 933 (1964) (a swamp is an open field). *But see Norman v. State*, 379 So. 2d 643 (Fla. 1980) (a closed tobacco barn is not part of the open fields).

In *Oliver*, the United States Supreme Court's reaffirmation of the *Hester* open fields doctrine rests upon three distinct rationales. First, the Court held that the language of the fourth amendment which calls for protection of persons, houses, papers, and effects does not afford protection to open fields. Specifically, "effects" does not include open fields. *Oliver*, 104 S. Ct. at 1740. Second, an individual's expectation of privacy in an open field will not be afforded constitutional protection by the Court since it is not an expectation of privacy that society is prepared to recognize as reasonable. *Id.* at 1740–41 (citing *Katz v. United States*, 389 U.S. 347 (1967)). Third, the Court contrasted open fields with the curtilage, the area immediately surrounding a dwelling, which the common law recognized as "the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Oliver*, 104 S. Ct. at 1742 (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)). The Court reasoned that the common law's distinction between the curtilage and other real property implies that the curtilage, and not neighboring open fields, is entitled to the fourth amendment protections that attach to the home. *Oliver*, 104 S. Ct. at 1742.

As the United States Supreme Court did in the *Oliver* case, courts often contrast "the curtilage" with other real property, affording the former search warrant protection. In *State v. Hanson*, 113 N.H. 689, 313 A.2d 730 (1973), a case decided under the Federal Constitution, we held that a marijuana field surrounded on three sides by woods and on the fourth by a grown-up field, and which was a quarter of a mile from a dwelling and not visible from it, was outside the dwell-

ing's curtilage and thus not protected under the fourth amendment. *Id.* at 691, 313 A.2d at 732. We defined the curtilage as including "those outbuildings which are directly and intimately connected with the habitation and in proximity thereto . . . and the land or grounds surrounding the dwelling which are necessary and convenient and habitually used for family purposes and carrying on domestic employment." *Id.* at 690–91, 313 A.2d at 732 (citations omitted); *cf. State v. Pugliese*, 120 N.H. 728, 422 A.2d 1319 (1980).

■ We are convinced that part I, article 19 of the New Hampshire Constitution, which protects "possessions," like provisions of other American constitutions which protect either "possessions" or "effects," was not designed to protect "open fields," which are unoccupied and undeveloped lands somewhat removed from dwellings and other protected structures, from warrantless searches. Accordingly, for the purposes of applying part I, article 19, although we interpret "possessions" broadly, we do not interpret that word so broadly as to include "open fields."

■ In the present case, the trial court correctly ruled that a warrant was not needed for the initial search of the defendant's Ossipee property. The court found that the marijuana fields which the police searched were open fields lying outside the defendant's curtilage and thus were outside the State Constitution's warrant protection.
As for the second search, we hold that probable cause existed for the issuance of the search warrant for the inside of the defendant's trailer.

■■ Part I, article 19 of our State Constitution requires that probable cause to search must exist to support the issuance of a search warrant. Probable cause to search exists if the person of ordinary caution would be justified in believing that what is sought will be found in the place to be searched and that what is sought will aid in a particular apprehension or conviction. Finally, we will read, test and interpret affidavits in support of search warrants in a realistic fashion, using common sense and according deference to an issuing magistrate's determination of probable cause. *State v. Corey*, 127 N.H. 56, 58, 497 A.2d 1196, 1198 (1985) (and citations therein).

■ In the affidavit in support of the search warrant for the Pinder trailer, one of the officers who conducted the initial search related how he and the other officers searched the defendant's open fields and found large numbers of marijuana plants. The officer also related that the marijuana was being watered by an extensive network of hoses and pipes which led directly to the Pinder trailer.

With this information in hand, we hold that a person of ordinary caution would be justified in believing that materials "used to grow, store, cultivate, or harvest marijuana in all of its various forms" would be found in the defendant's trailer.

Since we affirm the defendant's conviction we need not discuss other arguments advanced by the State in its brief.

*Affirmed.*

All concurred.