760

Rockingham
No. 83-128

THE STATE OF NEW HAMPSHIRE

v.

STEPHEN D. KELLENBECK

April 13, 1984

*Gregory H. Smith,* attorney general (*John A. Malmberg,* assistant attorney general, on the brief and orally), for the State.

*John A. Macoul,* of Salem, by brief and orally, for the defendant.

BROCK, J.   The defendant appeals his conviction of being a felon in possession of a firearm. RSA 159:3 (Supp. 1983). The issues presented are: (1) whether there was probable cause to support the issuance of a search warrant; and (2) assuming the validity of the search warrant, whether the scope of the actual search, pursuant to

the warrant, amounted to an impermissible general exploratory search. For the reasons which follow, we reverse.

On September 1, 1982, the Portsmouth Police Department sought a warrant permitting it to search the premises located at 282 Hanover Street in Portsmouth and the person of James Lee Gilbert, Jr., and to seize therefrom "one pair of shoes with tread pattern . . . 'Puppies.'" The only information submitted to the Rye Municipal Court (*Gray*, J.) in order to secure the warrant was contained in an affidavit by a Portsmouth police detective. The affidavit essentially stated the following:

(1) A burglary, involving entry of a safe, had taken place on or about April 11, 1982, at Long's Exxon in Portsmouth. While processing the crime scene, the police observed footprints, between the sizes of approximately 9 and 11, on the countertop inside the gas station. The footprints bore the tread pattern "Puppies" from the toe to the heel, down the center in 1/2 inch block letters. Only one set of footprints was found at the burglary scene.

(2) James Lee Gilbert, Jr., had been indicted on July 28, 1982, for the April 11, 1982, burglary of Long's Exxon.

(3) A burglary, involving entry into a safe, occurred on or about August 19, 1982, at the Great Bay Disposal Company in Portsmouth. Footprints, between the sizes of approximately 9 and 11, and bearing the tread mark "Puppies," from the toe to the heel, down the center in 1/2 inch block letters, were found outside the building and also inside on some papers apparently removed from the safe by the perpetrator or perpetrators.

(4) Gilbert had been previously convicted for a burglary involving entry into a safe.

(5) Gilbert had been seen recently by the affiant driving an automobile which had also been observed by the affiant and other police officers parked in front of 282 Hanover Street. A check of motor vehicle records showed that the car was registered to Gilbert at that address. The city assessor's records also indicated that Gilbert claimed 282 Hanover Street as his residence.

The affidavit concluded with a statement of the affiant's belief that the shoes which left the "Puppies" prints at each burglary scene belonged to Gilbert, and that the shoes may be located on his person or within his residence. The affiant requested a search warrant to seize the shoes in order to compare the tread pattern with photographs of the tread patterns found at both burglaries in an attempt to make a positive match.

The request for a search warrant was granted, and the warrant was executed by five Portsmouth police officers. The house at 282 Hanover Street is owned by the defendant in the present case, Ste-

phen D. Kellenbeck. He, as well as Gilbert, resides there. The detective in charge of the search instructed the other four officers that they could look in anything in which they felt a pair of shoes would fit. They were also instructed that, if they encountered any controlled substances or anything that they felt was unusual and which could be verified as stolen, they were to seize those objects as well.

The detective informed the officers that Gilbert was a leading suspect in many burglaries in the area. The officers brought with them computer printouts of all property reported stolen to the police department for all of the years since the acquisition of their computer. The detective testified that this is common practice in their department so as to expedite the determination whether a particular object was stolen, rather than calling into headquarters and having the desk officer there check each item. The printout was not up to date, however, and items reported stolen in the previous three or four months did not appear on the list.

The search of 282 Hanover Street lasted approximately three hours. In the course of the search for the shoes, the officers looked in the defendant's kitchen cabinets, stove, freezer, and microwave oven, among other places. The shoes were never found.

The detective testified that he thought it unusual for the defendant Kellenbeck to have all new appliances and that the officers wrote down the serial numbers of these appliances because items from a recent appliance store burglary were not on their printout. In searching Gilbert's bedroom, the detective found a calculator in its original box. He removed it from the box and matched its number with a number on the printout of a calculator stolen in a burglary from an office supplier. Other items seized included a video camera found inside a green garbage bag in a kitchen cabinet and a telephone answering machine found in the defendant's bedroom.

The officer assigned to search Kellenbeck's bedroom observed a safe and informed him that "We're going to have to look inside the safe." The defendant refused to open it and called his attorney. The attorney then called a deputy in the Portsmouth Police Department, who in turn informed the officer that a handgun was inside the safe and told the officer to confiscate it. The parties agree that Kellenbeck was told that the police would drill open the safe if he did not unlock it, and that the defendant had no choice but to open it. Thus, the State does not contend that the gun was discovered pursuant to a consent search.

The defendant then unlocked the safe. The officer removed a brown paper bag from the safe. A semi-automatic .45 caliber pistol, some clips, and a box of ammunition were found inside the bag. The

officers knew at that time that the defendant was a felon. He was charged with being a felon in possession of a weapon and receiving stolen property, i.e., the video camera.

The defendant's pre-trial motion to suppress the evidence was denied by the Superior Court (*Dalianis*, J.), and the defendant's exception was noted. At trial, the charge of receiving stolen property was dismissed by the court upon the defendant's motion at the close of the State's evidence. The defendant was convicted on the charge of being a felon in possession of a firearm, was sentenced to one-and-one-half to three years at the State prison with the first six months suspended, was fined $1,000 plus a penalty assessment of $100 and was placed on probation for one year.

The first issue raised by the defendant requires us to determine whether a grand jury indictment for a similar crime is, by itself, a sufficient basis for a magistrate's determination of probable cause justifying the issuance of a search warrant. We hold, under the New Hampshire Constitution, part I, article 19, that it is not.

■ The State argues that *State v. Reynolds*, 122 N.H. 1161, 453 A.2d 1319 (1982), which held that one non-distinctive footprint made by a popular brand of running shoe was insufficient to support probable cause to arrest, is distinguishable from the present case primarily because the officer in *Reynolds* was acting without a warrant, while the officers in the present case had obtained a search warrant. While we recognize that a magistrate's determination of probable cause is entitled to deference by a reviewing court (*see State v. Sands*, 123 N.H. 570, 604, 467 A.2d 202, 223 (1983)), we cannot emphasize too strongly that this determination by the magistrate must be made *independently*, based on the information presented to him.

■■ Part I, article 19 of the New Hampshire Constitution requires that probable cause exist to support the issuance of a search warrant. *See State v. Fields*, 119 N.H. 249, 252, 400 A.2d 1175, 1177 (1979); *State v. Spero*, 117 N.H. 199, 204, 371 A.2d 1155, 1158 (1977). "The purpose of the affidavit submitted to a magistrate is to provide him with information on which *he* can make an objective and detached determination of the existence of probable cause for the search requested." *State v. Spero*, 117 N.H. at 204, 371 A.2d at 1158. (Emphasis added.)

■■ Part I, article 19 thus protects the right to be secure from all unreasonable searches and seizures by requiring an objective determination of probable cause by a neutral and detached magistrate. This safeguard is removed when that magistrate abdicates his

responsibility by relying upon prior actions taken by a grand jury. A review of the record compels us to conclude that that is what happened in the present case.

The information before the municipal court judge concerned a burglarized safe and a footprint pattern at one location and a burglarized safe and a similar footprint pattern at a second location approximately four months later. The magistrate was also informed that Gilbert had previously been convicted of burglary involving entry into a safe. It is clear that *this* information presented to the magistrate, without consideration of the grand jury indictment, was insufficient to support a finding of probable cause to search. The only link connecting Gilbert to one or both of these burglaries, and therefore to the "Puppies" shoes, was the statement that Gilbert had been indicted by a grand jury for the first burglary. The magistrate did not have before him any information regarding the evidence which had been presented to the grand jury. He therefore did not know the basis on which the grand jury determined probable cause.

█ █ An indictment represents the *conclusion* of a grand jury that "there is probable cause to believe that particular crimes have been committed by particular persons. . . ." *United States v. Doe*, 460 F.2d 328, 331–32 (1st Cir. 1972), *cert. denied*, 411 U.S. 909 (1973); *see Kanteles v. Wheelock*, 439 F. Supp. 505, 511 (D.N.H. 1977); *Novosel v. Helgemoe*, 118 N.H. 115, 120, 384 A.2d 124, 127 (1978). This conclusion alone cannot substitute for the objective determination of probable cause to search, which is required by part I, article 19, to be made by a neutral and detached magistrate, when that magistrate is unaware of the evidence before the grand jury, and when the information before the magistrate, aside from the allegation of an indictment, is insufficient to support probable cause. *See Illinois v. Gates*, 103 S. Ct. 2317, 2332, *reh'g denied*, 104 S. Ct. 33 (1983) (under the fourth amendment, "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others"); *see also United States v. Defalco*, 509 F. Supp. 127, 139 (S.D. Fla. 1981) ("reliance on the grand jury to safeguard the Fourth Amendment prohibition of warrantless searches and seizures is inadequate protection of this basic constitutional right[; t]he magistrate must make his own determination as to probable cause and may not delegate that responsibility to a grand jury"). *Cf. State v. Flynn*, 123 N.H. 457, 463, 464 A.2d 268, 272 (1983) (a judge must determine whether there is probable cause prior to issuing a subpoena for bank records under RSA chapter 359-C (Supp. 1981), regardless of a grand jury finding of probable cause) (*but cf.* Laws 1983, 174:6, amending RSA 359-C:10, II).

▮ Furthermore, "probable cause to believe that a person is guilty of a crime does not always constitute probable cause to search any property belonging to him." *State v. Maxfield*, 121 N.H. 103, 106, 427 A.2d 12, 14 (1981) (quoting *United States v. Spearman*, 532 F.2d 132, 133 (9th Cir. 1976)); *see also State v. Doe*, 115 N.H. 682, 685, 371 A.2d 167, 169 (1975); 1 W. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS § 4.1(a) (2d ed. 1983) (probable cause to search is not the same as probable cause to arrest; the conclusions which justify either must be supported by evidence of the same degree of probity, but the conclusions themselves are not identical).

▮ We do not imply that all the evidence presented to the grand jury in order to secure an indictment must be duplicated before a magistrate in order to obtain a search warrant. We do state that a magistrate must be presented with *some* facts sufficient to establish a strong probability that the item sought in connection with a crime will be found on a particular person or in a particular location. *See State v. Comeau*, 114 N.H. 431, 434, 321 A.2d 590, 592 (1974).

▮▮ The grand jury indictment was an insufficient basis to support the magistrate's finding of probable cause to search. Because the information contained in the affidavit was insufficient to permit him to make an independent determination of probable cause, the warrant was invalid. *Cf. State ex rel. Childs v. Hayward*, 109 N.H. 228, 230, 248 A.2d 88, 89–90 (1968). Having determined that the warrant was invalid, and because the evidence would not support a finding that the officers made a valid warrantless search pursuant to a recognized exception to the warrant requirement, we hold that the search violated part I, article 19 of New Hampshire Constitution. *Cf. id.* (violation of the fourth amendment of the United States Constitution).

We have determined the issue of the existence of probable cause to support the search warrant under our State Constitution. Because we have found in the defendant's favor on this issue under part I, article 19, we need not address whether federal law would provide greater protection. *See State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

Furthermore, because we have determined that the warrant and the search conducted pursuant to that warrant were invalid, we need not reach the second issue regarding the scope of the search.

*Reversed.*

SOUTER, J., concurred separately; the others concurred.

SOUTER, J., concurring separately: I concur in the result and wish only to express this one time my reservation about the approach to

State constitutional adjudication adopted in *State v. Ball*, 124 N.H. 226, 471 A.2d 347 (1983), and followed here. When a federal constitutional standard is binding upon us and we do not question the soundness of the result it would require, I would rest the decision of the case on the federal standard. I would concentrate on the development of State constitutional law in those cases when a State rule would be different from its federal counterpart and would affect the outcome. I believe that over the long term, the adjudicatory process is likely to lead to sounder results when a practical difference is at stake.