Hillsborough
No. 83-094

THE STATE OF NEW HAMPSHIRE

v.

RONALD CHAMPAGNE

November 9, 1984

*Gregory H. Smith*, attorney general (*Gregory W. Swope*, assistant attorney general, on the brief and orally), for the State.

*James A. Connor*, of Manchester, by brief and orally, for the defendant.

DOUGLAS, J. The defendant was convicted, following a trial by jury, of being an accomplice, RSA 626:8, III(a), to arson, RSA 634:1, III(a). The defendant appeals, claiming multiple errors by the Trial Court (*Flynn*, J.). We affirm.

The defendant was charged under three separate indictments which allege that the defendant, with the purpose of promoting

arson, solicited another to commit arson in a building he owned, with the intent of collecting the resulting insurance payment. The first indictment charges the defendant with soliciting Russell Lemay to commit arson by paying him to start a fire on July 1, 1981. The second indictment charges the defendant with soliciting Lemay to commit arson by paying him to start a fire on June 27, 1981. The third indictment charges the defendant with soliciting Rainer Levasseur to commit arson by paying him to assist Lemay in starting a fire on June 27, 1981.

The testimony at trial recounted the events outlined below. At the times of the fires alleged in the indictments, the defendant was the mortgagor of the building located at 733 Grove Street in Manchester. The mortgagee was Jack Spyridakis, the prior owner of the building.

Russell Lemay testified that the defendant offered to pay him to burn down the defendant's building so that the defendant could collect $300,000 in insurance; that the defendant advanced Lemay $300 to purchase materials to effectuate their plan; that Lemay purchased gasoline and spread it around the building; and that on June 27, 1981, with the assistance of Levasseur, he ignited a fire in the building which damaged the building but did not "total" it. Lemay further testified that because the building was not "totalled," the defendant told him to try again to burn the building using incendiary bombs; that the defendant provided him with the materials for the bombs; that he placed the bombs in the building and ignited them, causing extensive damage to the building; and that as a result the defendant paid him $2,300.

Levasseur's testimony essentially confirmed Lemay's testimony and added that the defendant paid him $500 for his assistance. Experts testified that the building was extensively damaged by the July 1, 1981, fire and that the fire was caused by the ignition of bombs and other fire accelerants.

The defendant argues that the three indictments, charging him with soliciting another to commit arson, should have been quashed because they did not properly describe the property and because they were vague. He contends that these deficiencies deprived him of the opportunity to adequately prepare his defense. The disputed elements of the three indictments are essentially identical. The first indictment is illustrative. It provides that the defendant:

> "did, with the purpose of promoting the commission of the offense of arson, solicit Russell Lemay to commit the offense by paying him to do so, the said arson occurring on July 1, 1981 when Russell Lemay did knowingly start a

fire at 733 Grove Street, Manchester, New Hampshire, which fire unlawfully damaged the building owned by Ronald Champagne located at 733 Grove Street, Manchester, New Hampshire, the said Ronald Champagne acting with [the] purpose of collecting the insurance he had on the building, the said fire being started for the purpose of collecting the insurance on the building;"

■ ■ The test to determine the sufficiency of indictments is whether they provide the defendant with enough information to adequately prepare his defense. *State v. Beaudette*, 124 N.H. 579, 582, 474 A.2d 1012, 1014 (1984); *State v. Taylor*, 121 N.H. 489, 495, 431 A.2d 775, 778 (1981); *State v. Meloon*, 119 N.H. 76, 77, 397 A.2d 1041, 1042 (1979). These indictments clearly notified the defendant that he was accused of being an accomplice to arson of a specific building that he owned with the purpose of collecting the insurance proceeds. The indictments identify the elements of arson specified in RSA 634:1, III(a). We fail to see how these indictments could have failed to notify the defendant of the crimes he was charged with so as to prevent him from adequately preparing his defense.

■ The fact that the indictments describe the property as being owned by the defendant, the mortgagor, does not impair their sufficiency, as defendant contends, under *State v. Marion*, 122 N.H. 20, 440 A.2d 448 (1982). In *Marion* we held only "that a mortgagee's interest in the structure is sufficient so that the structure may also be considered to be the property of another within the meaning of the Criminal Code." *Id.* at 24, 448 A.2d at 449. This decision does not even intimate that a mortgagor does not have a proprietary interest in the mortgaged property.

■ ■ The defendant contends that the evidence was insufficient to sustain the verdict. "In considering the sufficiency of the evidence . . . we must determine whether any rational trier of fact could have found guilt beyond a reasonable doubt . . . . [W]e must consider all the evidence . . . in the light most favorable to the State." *State v. Sands*, 123 N.H. 570, 589, 467 A.2d 202, 213–14 (1983) (citations omitted). "We have held that the weight and credence to be given to the evidence at trial is the very essence of a jury's function." *Id.* at 590, 467 A.2d at 214.

■ The defendant's chief dispute with the sufficiency of the evidence at trial is that the State's case depended largely on the uncorroborated testimony of three "convicts." This complaint is in

actuality not an argument against the sufficiency of the evidence, but rather, an argument against the credibility of the witnesses; it is, therefore, a matter which must be left to the trier of fact. *See id.* at 590, 467 A.2d at 214.

The defendant next argues that the trial court erred in allowing three of the State's witnesses to be present during jury selection. The defendant argues that the presence of the witnesses could have prejudiced certain jurors, who knew or had friendships with the witnesses, against his case. The State argued prior to jury selection that it desired the presence of the three witnesses during *voir dire* to ensure that none of the jurors selected, in fact, knew the witnesses.

■■ We agree with the defendant that a prior relationship between a juror and a witness could cause prejudice, and that, therefore, selection of such a juror should be avoided. *See Commonwealth v. Patterson*, 412 A.2d 481, 485 (Pa. 1980). We fail, however, to see how the mere presence of a witness during *voir dire* could cause prejudice. The defendant has not shown that any of these veniremen knew these witnesses, nor has he articulated any other rationale for excluding the witnesses from the *voir dire.* The State's justification for the presence of the three witnesses during *voir dire* was sound, especially when it is considered that these witnesses had had extensive criminal histories and *might* have been known to a number of the veniremen.

■ The defendant argues that he was improperly denied the opportunity to question the veniremen regarding post verdict discussions that they might have had in other cases. This argument is without merit. "The choice of questions to be asked on *voir dire* is a matter within the trial court's sound discretion." *State v. Goding,* 124 N.H. 781, 783, 474 A.2d 580, 581 (1984). In the instant case, however, the defendant did not proffer any justification for the requested question that would have led the trial court to believe that the question was appropriate. Accordingly, the trial court's refusal to ask the veniremen this question was a proper exercise of discretion.

■ The defendant next argues that the trial court improperly refused to allow him to introduce as an exhibit extradition papers that he claims would tend to show bias by one of the State's witnesses. During trial, however, the defendant did not specify the purpose for which he sought to introduce the extradition papers. "It is well established that a party must specify the grounds for his objection. . . . Because the defendant failed to give any reasons for his objection, he is precluded from raising this issue on appeal." *State v. Fournier,* 123 N.H. 777, 779, 465 A.2d 898, 900 (1983).

■ The defendant's final contentions, that the trial court erred in prohibiting him from questioning a witness regarding the witness' use of marijuana and in admitting slide photographs of the damaged building, are without merit. Whether evidence is admissible is usually within the discretion of the trial court, and we will not disturb its rulings absent an abuse of discretion. *See State v. Thresher*, 122 N.H. 63, 71, 442 A.2d 578, 582 (1982).

■ ■ The trial court questioned the witness in *voir dire* regarding his use of marijuana, determined that it did not affect his memory, and, therefore, ruled that further inquiry along these lines would be irrelevant. In effect the trial judge ruled that the witness was competent to testify. *See State v. St. John*, 120 N.H. 61, 62, 410 A.2d 1126, 1127 (1980). In the absence of any offer of proof that marijuana usage affected the reliability of the witness' testimony in this instance, there was no error in the trial court's ruling. The trial court also viewed the photographs out of the presence of the jury and determined that it was the jury's function to decide whether the fires of June 27, 1981, and July 1, 1981, caused the damage depicted in the photographs. We fail to see how these rulings could be construed as an abuse of discretion by the trial court.

*Affirmed.*

All concurred.