Merrimack
No. 84-342

## THE STATE OF NEW HAMPSHIRE

v.

## SIDNEY W. COREY

August 5, 1985

*Stephen E. Merrill*, attorney general (*Brian T. Tucker*, assistant attorney general, on the brief), by brief for the State.

*Joanne S. Green*, assistant appellate defender, of Concord, by brief for the defendant.

KING, C.J. The defendant was indicted for the crime of armed robbery. RSA 636:1. Trial by jury resulted in a verdict of guilty. Prior to trial, the defendant moved to suppress evidence obtained as the result of a search warrant on the ground that the affidavit supporting the warrant was insufficient to establish probable cause. During the trial, the defendant moved for a ruling that the indictment returned by the grand jury charged only the class B felony of robbery, RSA 636:1, I, and not the class A felony of armed robbery, RSA 636:1, III, and that he thus could be tried only for the lesser offense. The Superior Court (*DiClerico*, J.) denied both motions, and the defendant appeals. We affirm.

We begin by addressing the defendant's argument that the affidavit in support of the search warrant was insufficient to establish probable cause and that the seizure of evidence pursuant to the warrant violated his State constitutional rights. *See* N.H. CONST. pt. I, art. 19; *State v. Chaisson*, 125 N.H. 810, 814, 486 A.2d 297, 300 (1984).

The supporting affidavit stated that: an armed robbery at the Food Basket Store at 72A Washington Street in Concord had been reported to the Concord police at 4:42 in the afternoon on November 9, 1983; the clerk on duty, Muriel David, had been approached at the front register by a white male who was in his twenties, six feet in height, and wearing an army-style brimmed hat; he told her not to close the drawer of the register; he displayed the blade of a knife to her, which was concealed in his sleeve; and then he reached over the counter and grabbed a packet of banded twenty-dollar bills from the register drawer.

The affidavit also related the following. At the time of the robbery, Linda Lord, who resided across the street from the market, had been sitting on her doorstep. She had recognized an individual

she knew as "Sid" or "Sidney" walking into the store. She described him to the police as a white male, approximately 5 feet, 8 inches in height, weighing 145 pounds with brownish-blond hair and a mustache, and wearing jeans, a green army coat, and an army cap. She had further stated that he exited from the store after having been in the store for what she thought was only a minute. She had not known his last name, but had later identified his apartment as the first floor of 36 South State Street. She had said that a person named Debra Price had had an argument with the suspect at one time and might know his last name.

According to the affidavit, the police contacted Debra Price, who identified Sid as a former neighbor who lived with his brother Wallace and a girl friend. Sid used to drive a yellow Gremlin automobile which was registered in the name of a woman who lived on South State Street and was always parked on the street or driveway at that address.

A search warrant for 36A South State Street was issued on the basis of the affidavit. The inventory of the property taken pursuant to the warrant included a men's green corduroy hat, a green army jacket, and $180 in twenty-dollar bills.

We begin, as we must, by first making an independent analysis of the protections afforded under the New Hampshire Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), using decisions of the United States Supreme Court and other jurisdictions only as aids in our analysis, *see Michigan v. Long*, 103 S. Ct. 3469, 3476 (1983). Thereafter, we need address federal constitutional issues only insofar as federal law would provide greater protection. *State v. Ball*, 124 N.H. at 232, 471 A.2d at 351. In this case, since the defendant made no federal constitutional arguments, we make no separate federal analysis.

 "Part I, article 19 of the New Hampshire Constitution requires that probable cause exist to support the issuance of a search warrant." *State v. Kellenbeck*, 124 N.H. 760, 764, 474 A.2d 1388, 1391 (1984). "We have stated that '[p]robable cause to search exists if the man of ordinary caution would be justified in believing that what is sought will be found in the place to be searched . . . and that what is sought . . . will aid in a particular apprehension or conviction.'" *State v. Sands*, 123 N.H. 570, 603, 467 A.2d 202, 223 (1983) (quoting *State v. Doe*, 115 N.H. 682, 685, 371 A.2d 167, 169 (1975)). Further, we will read, test and interpret affidavits in support of search warrants in a realistic fashion, using common sense and according deference to a magistrate's determination of probable cause. *State v. Doyle*, 126 N.H. 153, 160, 489 A.2d 639, 644 (1985).

In his motion to suppress at trial, and on his appeal, the defendant limits his attack on the affidavit to one issue—whether the magistrate could adequately conclude from the affidavit that the witness, Linda Lord, was truthful. In so framing his argument, the defendant relies on the analytical framework of *State v. Mandravelis*, 114 N.H. 634, 325 A.2d 794 (1974). In *Mandravelis*, this court held that:

> "When all or part of the information comes from an informer, the police officer should: (a) state what part comes from the informer; (b) state the facts received from the informer not merely his conclusions; (c) state how the informer got the information; i.e., by personal observation or from another informer or otherwise; (d) state facts from which the magistrate can determine if the informer is a credible (truthful) person."

*Id.* at 637, 325 A.2d at 796. The defendant claims that the final requirement of credibility was not established in this case. We note that the standard delineated in the *Mandravelis* case was applied to anonymous police informants and therefore that such a standard is not appropriate to the case before us.

We find that the considerations that require the police to indicate affirmatively the credibility of a police informant are not present when the information is obtained from the eyewitness of a crime. Absent some indication that the witness may not be telling the truth, such as the clear presence of bias, the police are not obligated to inquire into or to demonstrate the witness' credibility. As the Wisconsin high court observed:

> "[A]n ordinary citizen who reports a crime which has been committed in his presence, or that a crime is being or will be committed, stands on much different ground than a police informer. He is a witness to criminal activity who acts with an intent to aid the police in law enforcement because of his concern for society or for his own safety. He does not expect any gain or concession in exchange for his information. An informant of this type usually would not have more than one opportunity to supply information to the police, thereby precluding proof of his reliability by pointing to previous accurate information which he has supplied."

*State v. Paszek*, 50 Wis. 2d 619, 630–31, 184 N.W.2d 836, 843 (1971); *see also* 1 W. LaFave, Search and Seizure § 3.4 (1978).

■ Eyewitnesses usually are at the scene by chance and have no motive to fabricate information. Since "[a] finding of probable cause to support a search warrant does not require more than a showing of 'a strong probability that the facts alleged are true,'" *State v. Emery*, 123 N.H. 630, 634, 465 A.2d 922, 924 (1983) (quoting *State v. Comeau*, 114 N.H. 431, 434, 321 A.2d 590, 592 (1974)), we see no reason to impose tests of reliability, designed for police informants, upon eyewitnesses.

■ This court has held that "the credibility of the victim of a crime does not need to be proven or bolstered when the police apply for a search warrant." *Id.* We find that a witness to a crime should be accorded similar treatment to that of a victim of a crime for purposes of establishing probable cause to issue a search warrant. Therefore, absent circumstances indicating a lack of credibility, the State need not affirmatively establish the credibility of an eyewitness.

In this case the witness, Linda Lord, was seated on her doorstep across the street from the store at the time the robbery occurred. Although she did not see the defendant take the cash from the cashier, she did see him enter the store and then exit shortly afterwards. She recognized him as a member of the local community, known as "Sid" or "Sidney". Her observations of his clothing and general appearance were very similar to those reported to the police by the cashier who had been robbed.

■ The information given by Linda Lord was based upon her personal observation at the scene of the crime as well as her familiarity with the defendant. Contrary to the assertions of the defendant, no circumstance indicated any reason to suspect Ms. Lord's credibility. We therefore hold that the affidavit provided probable cause to issue the warrant.

The defendant's second argument is that the indictment charged a class B and not a class A felony, because the indictment did not specifically set out one of the three aggravating circumstances under RSA 636:1, III which escalate the offense to a class A felony. The indictment charged that the defendant:

"did, with the purpose to deprive the owner, Food Basket, thereof, obtain unauthorized control over cash in excess of Four Hundred and Twenty Dollars ($420.00) from the Food Basket at 72A Washington Street, Concord, New Hampshire by threatening Muriel David, Clerk, with immediate use of physical force by a deadly weapon, to wit: a knife."

Directly below the body of the indictment was the caption "RSA 636:1 (Class A Felony)." At trial, the defendant moved for a ruling that the indictment alleged only a class B felony. The trial court denied the motion.

RSA 636:1, III provides that robbery is a class B felony which escalates to a class A felony if the defendant

"(a) was actually armed with a deadly weapon; or
(b) reasonably appeared to the victim to be armed with a deadly weapon; [or]
(c) inflicted or attempted to inflict death or serious bodily injury on the person of another. . . ."

■■ Under part I, article 15 of the New Hampshire Constitution, "[n]o subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him. . . ." For an indictment to be constitutionally sufficient, it must give a defendant enough information about the charges to allow him to prepare for trial. *State v. Champagne*, 125 N.H. 648, 651, 484 A.2d 1161, 1163 (1984) (citing *State v. Beaudette*, 124 N.H. 579, 582, 474 A.2d 1012, 1014 (1984)). It therefore "must include all of the elements which constitute the offense charged." *State v. Stiles*, 123 N.H. 680, 683, 465 A.2d 908, 910 (1983).

■ This court has stated that "[t]he additional facts set forth in paragraph III are essential elements of the Class A felony" of armed robbery. *See State v. Shannon*, 125 N.H. 653, 664, 484 A.2d 1164, 1173 (1984); *cf. State v. Champagne*, 119 N.H. 118, 121, 399 A.2d 287, 289 (1979) ("the aggravating facts set forth in RSA 634:1, III are essential elements of the State's case for felonious arson").

■ In its entirety, the indictment plainly informed the defendant that the crime charged involved the use of a deadly weapon and that he was charged with a class A felony. On these facts, the indictment sufficiently alleged a class A felony, and the defendant was not prejudiced. *See State v. Shannon, supra* at 664–65, 484 A.2d at 1173. We affirm the trial court's denial of both motions.

*Affirmed.*

All concurred.