Grafton
No. 85-526

THE STATE OF NEW HAMPSHIRE

v.

JOAN BRADBERRY

December 31, 1986

*Stephen E. Merrill,* attorney general (*Robert B. Muh,* assistant attorney general, on the brief and orally), for the State.

*McNamara, Larsen & Schuster P.A.,* of Lebanon (*Mark A. Larsen* on the brief and orally), for the defendant.

BROCK, C.J.   The defendant, Joan Bradberry, was found guilty by the Superior Court (*Johnson,* J.) of possession of Lysergic Acid

Diethylamide (LSD), RSA 318-B:26, I(b)(1), possession of Valium, RSA 318-B:26, I(b)(2), and transportation of marijuana, RSA 265:80. She appeals from the trial court's order denying her motion to suppress evidence seized from her vehicle in the course of a search pursuant to a warrant issued by the Lebanon District Court (*Lovejoy*, J.). We affirm the trial court's determination.

On October 10, 1984, the defendant was arrested after police, armed with a warrant, searched her vehicle and found cocaine, cutting material (an agent used to dilute the strength of the drug), Valium, marijuana pipes, straws, scalpels, scales, a calculator, a book listing weights and amounts, and a plastic vial containing three "hits," or dosage units, of LSD. At a jury-waived trial, the defendant moved to suppress this evidence, alleging that probable cause for issuance of the warrant did not exist. The court denied the motion, ruling that the warrant had been "properly issued."

The affidavit, which was signed by Officers Dutille and Beckett of the Lebanon Police Department, and the testimony supporting the warrant, center around two informer tips and certain police corroboration thereof. First, Sergeant Laurie, also of the Lebanon Police Department, informed Detective Beckett that he had been contacted by an anonymous informant who told him that Joan Bradberry, of Taftsville, Vermont, had a serious cocaine problem that was supposedly "ruining her life." The caller stated that Bradberry was a dealer; that she sold the drugs from her car, a three-year-old white Saab with Vermont registration VN 817; and that she carried a gun. Second, Sergeant Dutille told Detective Beckett that he was told by a confidential informant, a trustworthy businessman whom he had known for fifteen years, that the informant had seen Bradberry using cocaine within four days prior to October 10, the date the warrant was sought; that he had seen it in her car within those four days; that the informant recognized the drug because he had in the past used it himself; and that the informant had seen Bradberry in a car answering the first informant's description.

The police corroborated the part of the first tip describing the car Bradberry drove, and the license plate number. It is not clear from the record whether the police told the district court judge that the businessman-informant had said he had used cocaine with Bradberry at the time he observed her. The magistrate's handwritten notes on the affidavit, as translated by counsel, are as follows: "October 10, 1984, Sergeant Dutille offered sworn testimony relative to the reliability of the informant and the Court concludes that the informant is reliable and trustworthy of belief. . . . Testimony was further offered by applicant Becket[t] placing the subject at the res-

idence of a known user." It was on this basis that the search warrant was issued.

The defendant argues on appeal that the affidavit submitted in support of the application for a warrant failed to satisfy the requirements of either *State v. Mandravelis*, 114 N.H. 634, 325 A.2d 794 (1974) or *Illinois v. Gates*, 462 U.S. 213 (1983). Initially, the State argues that the defendant does not maintain that part I, article 19 of the New Hampshire Constitution provides her greater protection than the fourth and fourteenth amendments to the Federal Constitution, and thus federal standards should be applied in deciding this case. I disagree with the State's claim. The fallacy of the State's argument becomes evident upon review of the defendant's brief, wherein she argues that this court's approach to search and seizure law is grounded in *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969). If this were actually the case, the *Aguilar-Spinelli* analysis could in certain instances provide criminal defendants with greater protection than would be provided under the current *Gates* "totality-of-the-circumstances" test, *Gates, supra* at 233. In addition, the specific case most relied on by the defendant, *State v. Mandravelis supra*, and argued by her to be applicable under the State Constitution, is not necessarily consistent with current fourth amendment jurisprudence. Therefore, for the defendant's argument to make any sense, it must be premised upon a belief that the State Constitution affords her greater protection than does the federal. The defendant purports to raise only State constitutional issues, although she does refer to the federal counterpart of part I, article 19, U.S. CONST. amends. IV, XIV, from time to time. Thus, I will deal solely with the State constitutional issues in this opinion.

■ My brother Souter argues in his special concurrence that the State constitutional issue has not been properly preserved for appeal, and hence relies on the fourth and fourteenth amendments to the United States Constitution to reach the conclusion articulated in this opinion. Justice Souter cites *State v. Dellorfano*, 128 N.H. 628, 517 A.2d 1163 (1986) as support for his position. I believe this reliance is misplaced inasmuch as it entails an overly broad reading of that case. *Dellorfano* enunciated two prerequisites for preservation of a State constitutional issue: first, the defendant must raise the issue at the trial court level, and second, he or she must "invoke a provision of the State Constitution," *id.* at 632, 517 A.2d at 1166, in his or her appellate brief. Justice Souter regards each of these conditions as unfulfilled in this case. I disagree. The defendant cited the relevant State constitutional provision in her requests for findings

of fact and rulings of law. This, in my view, was sufficient to satisfy the first *Dellorfano* condition. The second condition was also met in that the defendant specifically stated in her appellate brief that the application of part I, article 19 of the State Constitution was the sole issue raised on appeal. This does not, contrary to my brother's position, constitute a case of mere passing reference to the State Constitution, but, rather, given the presentation and context of the argument as a whole, a case squarely based on it. Thus, I conclude that the State issue has been preserved for appeal, and it should therefore be addressed. Parenthetically, however, I commend the general thrust of my brother's position and explication of how issues should be properly raised and argued to members of the bar in order that the issue that divides the court in this case may be avoided in the future. The defendant's position may correctly be characterized as confusing, and, to that extent, I am in agreement with my brother.

The defendant argues that the affidavit failed to satisfy the four requirements set out in *State v. Mandravelis supra*, resulting in a violation of the State Constitution, part I, article 19. She also asserts that the affidavit does not provide information concerning either the informer's credibility or the fact that evidence of a crime would be found in the Bradberry vehicle.

In *State v. Mandravelis*, this court stated that

> "[w]hen all or part of the information [contained in an application for a search warrant] comes from an informer, the police officer should: (a) state what part comes from the informer; (b) state the facts received from the informer not merely [the informer's] conclusions; (c) state how the informer got the information; *i.e.*, by personal observation or from another informer or otherwise; (d) state facts from which the magistrate can determine if the informer is a credible (truthful) person."

*Id.* at 637, 325 A.2d at 796.

The defendant's argument that *State v. Mandravelis* applies is premised partially on a belief that it either was decided under the State Constitution or has since been adopted by this court as applicable to part I, article 19. Both formulations of the defendant's premise are incorrect. A careful reading of *State v. Mandravelis* indicates that its reasoning was based upon the prevailing federal constitutional analysis in effect at the time it was decided. In addition, while some of this court's recent pronouncements may be equivocal regarding the constitutional basis of *State v. Mandravelis*, see *State v. Stiles*, 128 N.H. 81, 84, 512 A.2d 1084, 1087 (1986) and *State v. Corey*, 127 N.H. 56, 59, 497 A.2d 1196, 1198–99 (1985), this

court has never explicitly held that the *State v. Mandravelis* requirements are mandated by our State Constitution.

However, I would reject the defendant's further assertion that the rigid two-pronged approach of *Aguilar-Spinelli* should be followed by this court. Rather, I would choose to adopt a more sensible and flexible approach to the determination of whether probable cause exists in cases involving the issuance of search warrants based on informants' tips; namely, a totality-of-the-circumstances test akin to that set out by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983). However, I hasten to emphasize that such a test would be our own and would not be tied to present or future federal pronouncements on the issue. In other words, recognizing the renewed vigor of State constitutional analysis, *see* Abrahamson, *Criminal Law and State Constitutions: The Emergence of State Constitutional Law*, 63 TEX. L. REV. 1141, 1144–48 (1985), I would choose to follow our own path through the labyrinth of search and seizure law. Although the words used to describe the test would be borrowed from the United States Supreme Court, their interpretation and content would be for this court in construing part I, article 19. I note, however, that the *State v. Mandravelis* factors would remain factors which, among others, should be considered by our judges in determining whether probable cause exists in cases where they are applicable. These factors would be flexible in the sense that a deficiency in one could be offset by an abundance in another, and the presence of police corroboration also might affect the determination. The point, I believe, is one this court has emphasized many times in the past: that the determination of probable cause is a common-sense, fact-centered determination to be made by an independent magistrate.

This court's definition of probable cause has been set out frequently before, and I state it again here: Probable cause exists

> " 'if the [person] of ordinary caution would be justified in believing that what is sought will be found in the place to be searched . . . and that what is sought, if not contraband or fruits or implements of a crime, will "aid in a particular apprehension or conviction." ' . . . To obtain a search warrant, the police must show that at the time of the application for the warrant there is a substantial likelihood of finding the items sought; they need not establish with certainty, or even beyond a reasonable doubt, that the search will lead to the desired result."

*State v. Marcotte*, 123 N.H. 245, 248, 459 A.2d 278, 279–80 (1983)

(quoting *State v. Doe*, 115 N.H. 682, 685, 371 A.2d 167, 169 (1975)) (citations omitted). This court has more recently stated that our review of a judge's ruling on a suppression motion

> "necessarily must reflect the contextual, commonsensical, and fact-based nature of any probable cause determination. *See State v. Breest*, 116 N.H. 734, 743, 367 A.2d 1320, 1328 (1976). In addition, another basic principle to which we adhere is the preference which we accord warrants, *see Marcotte, supra* at 248, 459 A.2d at 280, and the deference which we afford magistrates, especially in close cases. *See State v. Sands*, 123 N.H. 570, 604, 467 A.2d 202, 223 (1983)."

*State v. Jaroma*, 128 N.H. 423, 428, 514 A.2d 1274, 1277 (1986). The standard for the determination of probable cause in the first instance is objective, *see State v. Thorp*, 116 N.H. 303, 306–07, 358 A.2d 655, 658–59 (1976), and hypertechnicality in interpretation of affidavits is not favored, *State v. Doyle*, 126 N.H. 153, 160, 489 A.2d 639, 644 (1985). Further, this court has stated that "[a] search based on a magistrate's determination of probable cause does not require the same standard of reliability as does a warrantless search." *State v. Beaulieu*, 119 N.H. 400, 403, 402 A.2d 178, 180 (1979). However, the affidavit is not to be regarded as a mere formality; rather, its purpose "is to provide [the issuing magistrate] with information on which he [or she] can make an objective and detached determination of the existence of probable cause for the search requested. . . . The magistrate is limited to considering the information contained in the affidavit, along with any additional testimony supplied under oath." *State v. Spero*, 117 N.H. 199, 204, 371 A.2d 1155, 1158 (1977). Having set out these principles, I proceed to consider the affidavit submitted to the judge in the present case and the information placed before him in the form of oral testimony.

The contents of the two informers' tips were quite different in quality and quantity. The first tip was a telephonic tip from an anonymous informant who made several statements regarding the defendant's use and sale of cocaine. The basis for this informant's statements is evident neither from the affidavit nor from the testimony given by the police officers before the magistrate, and his or her credibility was not established. In addition, the only piece of information supplied by the first informant which was subsequently corroborated by the police was that concerning the type of car driven by the defendant and the vehicle's license plate number. This tip and corroboration of a single piece thereof alone would not properly give rise to a finding of probable cause.

The second informant's tip was significantly more complete. The basis of the information provided by this businessman-informant was stated to be his own personal knowledge and observation. This informant stated that he had seen cocaine in Bradberry's car within the past four days, and that he knew what cocaine looked like because he had used it himself in the past. The second informant confirmed the first informant's description of Bradberry's car, although he did not provide as much detail regarding it as did the first informant. Officer Dutille also testified to his long acquaintanceship with the informant and that he had never known the latter to be untrustworthy.

There was some confusion at the suppression hearing regarding what the magistrate was actually told, but considering all of the undisputed information as a whole, I believe that there was probable cause to issue the warrant. The credibility of the second informant was established by Sergeant Dutille's testimony regarding his long acquaintanceship with the informant, the informant's lack of a criminal record, and his status as a businessman in the community. The informant could recognize cocaine because he had used it in the past and his information was explicitly stated to be based on personal observation. There was also some cross-corroboration from the first informant, whose tip, although involving a second level of hearsay, could be considered by the magistrate because Officer Beckett was entitled to rely on information from another police officer. *See State v. Beaulieu*, 119 N.H. at 403, 402 A.2d at 181. I would hold that this combination of information would easily lead a reasonable person to believe that the defendant was in possession of cocaine and that it was quite likely that the cocaine would be found in her car. Therefore, probable cause existed to support issuance of the warrant, the motion to suppress was properly denied, and the convictions should be affirmed.

Finally, in my brother Batchelder's special concurrence, he expresses his fear that by adopting a totality-of-the-circumstances test, this court would thereby undermine "court review of police activity based on informants' tips." My brother's apprehension would be unwarranted under such a test. Under my proposed new test, a neutral and detached judge must still be presented with information sufficient to warrant a person of ordinary caution in the belief that "'what is sought will be found in the place to be searched.'" *State v. Marcotte*, 123 N.H. at 248, 459 A.2d at 279–80 (quoting *State v. Doe*, 115 N.H. at 685, 371 A.2d at 169). Moreover, such a test would merely allow courts to consider the totality of the circumstances in determining whether probable cause existed to

support a given warrant in a particular case. It would neither remove nor lessen the judicial independence and neutrality requirements which this court has long held to be prerequisites of the probable cause determination. *See, e.g., State v. Spero,* 117 N.H. at 204, 371 A.2d at 1158.

In addition, this court has never expressly adopted *State v. Mandravelis,* 114 N.H. 634, 325 A.2d 794 (1974), a fourth amendment case, under our State Constitution, and it has been discredited as a matter of federal law. Thus, my brother's reliance thereon is misplaced.

Further, I do not suggest that where there is a total lack of information relating to the credibility of an informant a warrant could issue. In any event, that is not the situation in this case, as my brother Batchelder must properly concede.

*Affirmed.*

JOHNSON, J., did not sit; BATCHELDER, J., concurred specially; SOUTER, J., with whom THAYER, J., joined, concurred specially.

BATCHELDER, J., concurring specially: I concur in the result today because the search warrant issued in this case was valid under *State v. Mandravelis,* 114 N.H. 634, 325 A.2d 794 (1974). However, I reject any departure from the straightforward requirements of *Mandravelis* for the essentially standardless "totality-of-the-circumstances" approach to probable cause determinations.

The issue before us is not a novel one. Simply stated, it comes down to this: How much support and propping up must be required of otherwise inadmissible hearsay in order for a magistrate to accept it as a basis for determining probable cause sufficient to permit the government to invade a right of privacy protected by part I, article 19 of the New Hampshire Constitution and the fourth amendment to the United States Constitution. When considering the meaning and effect of part I, article 19 of the New Hampshire Constitution, it is worthwhile to consider Justice Jackson's admonition in *Brinegar v. United States,* 338 U.S. 160 (1949):

> "[The rights of the people to be free from unreasonable searches and seizures] are not mere second-class rights but belong in the catalog of indispensable freedoms. Among deprivations of rights, none is so effective in cowing a population, crushing the spirit of the individual and putting terror in every heart. Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government. . . .

> But the right to be secure against searches and seizures is one of the most difficult to protect. Since the officers are themselves the chief invaders, there is no enforcement outside of court."

*Id.* at 180–81 (dissenting opinion). The lead opinion disregards the dangers of eroding these precious rights by undermining court review of police activity based on informants' tips.

Under part I, article 19 of the New Hampshire Constitution, search warrants must be supported by probable cause. *See, e.g., State v. Pinder,* 128 N.H. 66, 74, 514 A.2d 1241, 1246 (1986). *Mandravelis supra* provides the proper analytical framework for determining whether the police have sufficient information to establish probable cause to search under State law when they rely, in whole or in part, on an informant's tip. *See State v. Corey,* 127 N.H. 56, 59, 497 A.2d 1196, 1198–99 (1985). In *Mandravelis,* this court stated that:

> "the basic requirements for a valid search warrant . . . [mandate that w]hen all or part of the information comes from the informer, the police officer should: (a) state what part comes from the informer; (b) state the facts received from the informer not merely his conclusions; (c) state how the informer got the information; *i.e.,* by personal observation or from another informer or otherwise; (d) state facts from which the magistrate can determine if the informer is a credible (truthful) person."

*Id.* at 637, 325 A.2d at 796. "These requirements are designed to ensure that the magistrate will be able to make an independent determination as to probable cause." *State v. Gilson,* 116 N.H. 230, 232, 356 A.2d 689, 691 (1975).

In the present case, one of the officers received an informant's tip which indicated that the defendant was a drug user who kept cocaine in her car. As noted in the lead opinion, the officer related the specific facts which he had received from the informant to the magistrate, indicated that the information was based on the informant's personal observations, and advised the magistrate that the informant was a businessman whom he had never known to be untrustworthy over the course of a 15-year acquaintance. In addition, the other officer involved testified before the magistrate that the defendant had been at the home of a known drug user. *Cf. Mandravelis,* 114 N.H. at 638, 325 A.2d at 796. Thus, the affidavit and testimony supporting the search warrant provided the magistrate with specific information enabling him to make an independent

determination of probable cause, and the requirements of *Mandravelis* were satisfied. Therefore, I find that the search warrant was properly issued and I concur only in the result today.

I reject the lead opinion's reliance on a "totality-of-the-circumstances" approach to probable cause determinations. The problem with reliance on this approach in this case is that it is unnecessary because the challenged search warrant is valid under *Mandravelis*. As a matter of prudence, this court should not "decide questions of a constitutional nature unless absolutely necessary to a decision of the case." *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring).

More importantly, adoption of the "totality-of-the-circumstances" approach would be unwise. *See generally* 1 LaFave, Search and Seizure § 3.3 (Supp. 1986). *Mandravelis* is good law. It sets forth a workable standard and set of guidelines which, when applied in a practical rather than a stilted or wooden manner, has served the State well for more than a decade. I see no reason to abandon its teachings for the uncertain and unpredictable currents of fourth amendment law presently being written in the federal judiciary, albeit relied upon only for guidance by the lead opinion.

By definition, only reliable information can establish probable cause. Information which is less than reliable would not justify the person of "ordinary caution" in the belief that a search or seizure was proper. *Cf. State v. Doe*, 115 N.H. 682, 685, 371 A.2d 167, 169 (1975). Information from unnamed police informers, standing alone, is unreliable and so cannot establish probable cause. "[I]t is to be expected that the informer will not infrequently reach for shadowy leads, or even seek to incriminate the innocent." *Jones v. United States*, 266 F.2d 924, 928 (D.C. Cir. 1959). Thus, it is not surprising that courts, in their search for the truth, consider an unidentified informer's tip inadmissible hearsay in the smallest civil trial. *See, e.g.,* N.H. R. Ev. 804.

The analytical framework adopted in *Mandravelis* attempts to balance the needs of law enforcement and our citizens' rights to be free from unreasonable searches and seizures. Under *Mandravelis*, warrants may be issued on the basis of informants' tips, but only if a magistrate is able to determine that the informer and the information supplied by him are reliable. Moreover, probable cause determinations are often difficult, and *Mandravelis* provides useful guidance to those court officers charged with enforcing the command of part I, article 19 of our Constitution "by directing [their] attention to relevant factors." Comment, *Illinois v. Gates: Re-Structuring Hearsay Analysis in Probable Cause Determinations*, 35 Syracuse L. Rev. 1067, 1111 (1984).

Unfortunately, the lead opinion would reject the useful analytical framework embodied in *Mandravelis* and adopt a "totality-of-the-circumstances" approach which would "encourage [ ] 'flight from analysis' in the face of complexity, instead of providing a helpful structure to encourage consistent decision-making." Comment *supra*. Because the "totality-of-the-circumstances" approach provides little or no guidance for those making probable cause determinations, one commentator has predicted that "the new approach will introduce mass confusion into lower court determinations of probable cause." Note, *Abandonment of the Two-Pronged Aguilar-Spinelli Test: Illinois v. Gates*, 70 CORNELL L. REV. 316, 331 (1985).

Although this case is not a difficult one, the problems which are inherent in the new approach are clear in the lead opinion today. It is suggested that an informer's credibility and basis of knowledge would remain central to the probable cause determination but that "these factors would be flexible in the sense that a deficiency in one could be offset by an abundance in another. . . ." This statement defies logic insofar as it suggests that an informer who recites his information in minute detail, but who is not at all credible, may supply all the information necessary to establish probable cause. This cannot be so because the reasonable person would surely recognize that if the informer "were concocting a story out of the whole cloth, he could fabricate in fine detail as easily as with rough brush strokes. Minute detail tells us nothing about 'veracity.'" *Stanley v. State*, 19 Md. App. 507, 533, 313 A.2d 847, 862 (1974).

Similarly, the lead opinion is off the mark if the suggestion is that an informer of known credibility who has no identifiable basis of knowledge can provide information which, standing alone, can establish probable cause. This result is forbidden by *Nathanson v. United States*, 290 U.S. 41 (1933); *see also Spinelli v. United States*, 393 U.S. 410, 423 (1969) (White, J., concurring). In *Nathanson*, the Supreme Court stated that:

> "[A magistrate] may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough."

290 U.S. at 47. Although the *Nathanson* Court was requiring that a police officer present more than a mere belief to support the issuance of a warrant, it would be unreasonable to adopt a lower standard for informants. As Justice White stated in this regard, "it would be 'quixotic' if a similar statement from an honest informant, but

not one from an honest officer, could furnish probable cause." *Illinois v. Gates*, 462 U.S. 213, 272 (1983) (White, J., concurring).

I realize that my position represents a minority view; most States which have considered this issue have accepted the "totality-of-the-circumstances" approach as a guide to probable cause determinations. *See, e.g., State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984). However, I adhere to this view because I believe that probable cause determinations must be made by court officers, not law enforcement officials, and, as the Washington Supreme Court stated in rejecting the *Gates* analysis:

> "To perform the constitutionally prescribed function, rather than being a rubber stamp, a magistrate requires an affidavit which informs him of the underlying circumstances which lead the officer to conclude that the informant was credible and obtained the information in a reliable way. Only in this way . . . can the magistrate make the proper independent judgement. . . ."

*State v. Jackson*, 102 Wash. 2d 432, 436–37, 688 P.2d 136, 139 (1984). Several other States have recognized the faults in the "totality-of-the-circumstances" approach and rejected it. *People v. Johnson*, 66 N.Y.2d 398, 497 N.Y.S.2d 618, 488 N.E.2d 439 (1985); *Commonwealth v. Upton*, 394 Mass. 363, 476 N.E.2d 548 (1985); *State v. Kimbro*, 197 Conn. 219, 496 A.2d 498 (1985); *State v. Jones*, 706 P.2d 317 (Alaska 1985).

The faults in the "totality-of-the-circumstances" approach to probable cause determinations arise from the failure to recognize that information from unnamed police informers, who either do not relate their basis of knowledge or who are not known to be credible, should be used only as a starting point for police investigation and not as a basis for probable cause. In some cases, reliance on informer's tips may be a necessary evil, but, because the motivations of the informer are often questionable, courts should encourage police to conduct their own investigations and thereby minimize reliance on the unnamed informer in the criminal justice process.

Souter, J., concurring specially: This appeal presents an issue of suppression under the fourth and fourteenth amendments of the Constitution of the United States, and in deciding this federal issue I concur in the result reached by the other members of the court who have filed opinions concluding that the challenged evidence is admissible. Like Justice Batchelder, I believe that the warrant may be sustained under the earlier federal rule summarized in *State v. Mandravelis*, 114 N.H. 634, 325 A.2d 794 (1974), and like the Chief

Justice I believe that the warrant would in any event pass muster under the current federal standard established by *Illinois v. Gates*, 462 U.S. 213 (1983). Unlike the Chief Justice and Justice Batchelder, however, I do not believe that the defendant has adequately presented an issue for our consideration under the provision of the State Constitution governing searches and seizures, part I, article 19.

In *State v. Dellorfano*, 128 N.H. 628, 517 A.2d 1163 (1986), we held that a "defendant must fulfill two preconditions before triggering a State constitutional analysis: [he] must raise the State constitutional issue below, [and his] brief must specifically invoke a provision of the State Constitution." *Id.* at 632, 517 A.2d at 1166 (citations omitted). The defendant in this case satisfied neither condition adequately.

The defendant's motion to suppress, filed in the trial court, cites two cases applying federal standards, *State v. Mandravelis supra* and *State v. Gilson*, 116 N.H. 230, 356 A.2d 689 (1976). Neither of them makes any reference to the Constitution of New Hampshire. The defendant's only trial court reference to the State Constitution occurs in a request for a ruling of law, that article 19 requires search warrants to be supported by probable cause. It is difficult to read this reference as anything more than an afterthought, and it does not in any case address the specific issue presented on appeal, which is the appropriate analytical standard for determining the value of hearsay derived from an unnamed informant. If the defendant believed that the State Constitution should be construed to justify her position on this issue, she had an obligation to say so squarely in her motion to suppress and to submit supporting analysis or authority. Her failure to do so was a failure to meet the first *Dellorfano* condition.

Although this failure behooves us to restrict our consideration to the application of federal standards, I think it is worthwhile to indicate why the defendant has also failed to satisfy the second *Dellorfano* condition, which requires her to address the State issue in her brief presented to us. I recognize that the actual language in *Dellorfano*, requiring a defendant to "invoke" the State Constitution in his appellate brief, can be read so narrowly as to suggest that a mere citation is sufficient to preserve a State issue on appeal. We cannot, however, accept such a limited view of *Dellorfano* or of a defendant's responsibility. Advocacy consists of something more than citation or incantation, and we have held in other contexts that a brief's mere passing reference to an issue does not suffice to present that issue for appellate adjudication. *See D.W. Clark Road Equip., Inc. v. Murray Walter, Inc.*, 124 N.H. 281, 285, 469 A.2d 1326, 1329 (1983).

Rather, a party seeking a State constitutional ruling in this court has no less a duty to us than he has to the trial court: to state the issue directly and to develop supporting arguments premised on policy or authority.

The defendant has not satisfied this obligation. In order to decide this appeal on State constitutional grounds we would first have to adopt a State standard for weighing hearsay derived from an unnamed informant, when such hearsay is offered to demonstrate probable cause. Given the current terms of the debate on this subject, we would have to choose between the *Mandravelis* demand for separate affirmative demonstrations of reliability and credibility, on the one hand, and the more generalized *Gates* totality-of-circumstances test, on the other. *See* opinions of Brock, C.J., and Batchelder, J., *supra*.

The defendant's brief does not address this issue. It is written, rather, on the assumption that the law as articulated in *State v. Mandravelis supra* is already a State constitutional standard. Although the defendant recognizes that *Mandravelis* itself applied federal law as articulated in *Aquilar v. Texas*, 378 U.S. 108 (1964), she assumes that we adopted the holding of *Mandravelis* as a State rule in *State v. Corey*, 127 N.H. 56, 497 A.2d 1196 (1985). This, however, was not the holding of *Corey*, where we distinguished the factual basis of *Mandravelis* as inapposite to the facts then before us. *State v. Corey, supra* at 59, 497 A.2d at 1198–99.

Whether *Mandravelis* should be adopted as a State constitutional standard is therefore wholly an open question, which the defendant does not address because of her reading of *Corey*. Instead, she restricts herself to an argument that application of the *Mandravelis* standard requires suppression of the evidence seized. She qualifies this approach only by two references to the general State requirement that there be probable cause for issuance of a warrant and by three other citations to article 19 in support of wholly conclusory statements. In sum, the defendant does not confront the novel issue of State constitutional law that underlies her position, and she does not address the debate between the views expressed in the preceding opinions of my brothers. The appeal is therefore inadequate to present an issue of State constitutional law for our review.

Perhaps it is worthwhile to add a word about the need that underlies the insistence on the standard I have tried to express. It is the need of every appellate court for the participation of the bar in the process of trying to think sensibly and comprehensively about the questions that the judicial power has been established to answer. Nowhere is the need greater than in the field of State constitutional

law, where we are asked so often to confront questions that have already been decided under the National Constitution. If we place too much reliance on federal precedent we will render the State rules a mere row of shadows; if we place too little, we will render State practice incoherent. If we are going to steer between these extremes, we will have to insist on developed advocacy from those who bring the cases before us. This is why a resolution of the disagreement dividing the Chief Justice and Justice Batchelder will have to wait for another day, as will our response to the State's position that this court has never adopted an exclusionary rule under article 19 and should not do so now.

THAYER, J., joins in the special concurrence of SOUTER, J.